(614 P.2d 1007)
No. 51,153
No. 51,154

STATE OF KANSAS, *Appellee,* v. THOMAS CARTER, *Appellant.*

Opinion filed July 18, 1980.

*Alan D. Herman,* of Jochems, Sargent & Blaes, of Wichita, for the appellant.

*Beverly Dempsey,* assistant district attorney, *Robert T. Stephan,* attorney general, and *Vern Miller,* district attorney, for the appellee.

Before FOTH, C.J., SPENCER and SWINEHART, JJ.

SWINEHART, J.: Defendant Thomas Carter appeals from an order revoking probation and imposing sentence for a burglary conviction in case No. 51,154, and from an order revoking the suspension of sentence on another burglary and a theft conviction in case No. 51,153.

The defendant raises five grounds for appeal: (1) The trial court committed prejudicial error by admitting hearsay evidence and by refusing to dismiss the revocation proceedings and to discharge defendant at the close of the State's evidence; (2) the trial court deprived defendant of his constitutional rights of due process and confrontation by admitting hearsay evidence; (3) the defendant did not waive objection to the trial court's refusal to dismiss the revocation proceedings by the presentation of evi-

dence; (4) the trial court erred in finding a willful violation of conditions of probation and abused its discretion in revoking defendant's probation; and (5) the trial court abused its discretion in imposing the maximum sentence on Count I of case No. 51,154 in light of the State's recommendation and defendant's cooperation.

The defendant, Thomas Carter, was charged in case No. 51,153 with one count of burglary of a residence on August 17, 1978, with the intent to commit a theft, in violation of K.S.A. 21-3715, and with one count of theft for obtaining unauthorized control over stereo equipment, two television sets, two jars containing change, a parakeet and a parrot, in violation of K.S.A. 1979 Supp. 21-3701(a). In case No. 51,154 the defendant was charged with one count of burglary for entering Dave Johnson Motors, Inc., on September 11, 1978, in violation of K.S.A. 21-3715, and one count of theft, in violation of K.S.A. 1979 Supp. 21-3701(a), for taking an automobile from the premises.

At the time the defendant was charged in these cases, he was in a two-year probation imposed on January 27, 1977, for burglary and theft charges.

Pursuant to plea negotiations, the defendant pleaded guilty to both counts in case No. 51,153 and to Count I in case No. 51,154 on January 22, 1979, before the Honorable Nicholas Klein of the Sedgwick County District Court. At that time the State advised the court of the plea agreement between the parties and so apprised the court again on January 29, 1979, when the defendant appeared for sentencing. The prosecution recommended the defendant receive the minimum sentences on all charges and that he be granted probation from the confinement portion of such sentences.

However, the trial judge sentenced the defendant to a maximum term of three to ten years on Count I of case No. 51,154, and suspended sentencing in case No. 51,153 for 120 days pending receipt of the report of KRDC. On April 9, 1979, sentence was suspended pursuant to K.S.A. 1979 Supp. 21-4603 on case No. 51,153 for a period of two years upon various terms and conditions, one being that the defendant be placed under the Sedgwick County Jail Work Release Program beginning April 13, 1979, for an indefinite period. The defendant was also granted probation from the confinement portion of the sentence imposed in case No.

51,154 for a period of two years upon various conditions, including participation in the work release program.

On May 7, 1979, James B. Hatfield, the defendant's probation officer, reported that defendant had violated rules numbered 3, 7, and 11 of the work release program. The rules provide:

"There will be no unauthorized absences from the job during the working day. Inmates that get off work earlier than scheduled are required to return to the county jail." Rule No. 3.

"Failure to report for work or to return to the institution on schedule will be deemed as an escape from confinement and the individual will be subject to prosecution." Rule No. 7.

"Inmates will be allowed one hour travel time to and from the job each day. The balance of the day will be spent in the county jail." Rule No. 11.

At the probation revocation hearing on May 16, 1979, the State called Larry Joe Barker, program officer for the Jail Corrections Department, who testified over the defendant's hearsay objections that the defendant had violated the above rules of the work release program. He violated rules 3 and 7 on April 30, 1979, by failing to report to work after leaving the jail. Barker had verified this violation with Cecil Schnipp who was the defendant's supervisor at Ultra Modern Pool and Patio where the defendant had been working. Barker also testified that the defendant violated rule No. 11 the next day because he returned to the jail at approximately 12:25 a.m., more than two hours after completing work for the day. Barker readily admitted that he had no personal knowledge of these violations, although he had received a phone call from the defendant's wife on April 30 informing him that the defendant was talking to Judge Klein, or attempting to talk to Judge Klein, about his case on that day. On Wednesday, May 2, the defendant again failed to report to work because his brother-in-law, Vernon Brooks, who provided transportation for the defendant, decided not to work that day. The defendant Carter, however, left the jail and did not return until approximately 8:35 p.m., several hours after his expected arrival. Therefore, he violated rules No. 3 and 11 on May 2. Barker stated that the defendant had been given a copy of the rules to read and signed a copy indicating he had read them.

The defendant moved to dismiss the proceedings on the grounds that the only evidence presented by the prosecution was hearsay and was not competent to meet the State's burden in a revocation hearing. The court denied the defendant's motion and the defendant therefore decided to offer evidence in his behalf.

The defendant, his wife, and his brother-in-law testified. Their evidence established that defendant's activities were basically the same as had been described by Barker, thereby confirming the rule violations that Barker had described by hearsay.

At the end of the hearing, and as embodied in a journal entry filed on May 25, 1979, the trial court found that the defendant had failed to comply with the terms and conditions of the suspended sentence which had been imposed in case No. 51,153, and therefore sentenced the defendant to not less than one nor more than ten years on both the burglary and theft charges. These sentences were to run concurrently with each other. The trial court also found that the defendant had failed to comply with the terms and conditions of his probation in case No. 51,154. Accordingly, probation was revoked and the defendant was ordered to serve the sentence of three to ten years which had originally been imposed in case No. 51,154. This sentence was to run concurrently with those in case No. 51,153. Notices of appeal were filed on May 21, 1979, in both cases.

Basically, the issues deal with the use of hearsay testimony elicited by the State from its sole witness, Larry Joe Barker, program officer for the Sedgwick County Jail Corrections Department. The defendant's attorney made a proper contemporaneous objection to the testimony given by the witness, which was overruled by the court. The record establishes without question that all of Barker's testimony was based solely upon information he had received from others, *i.e.,* the defendant's relatives, fellow workers and jail personnel.

The relevant statutes and case authority regarding probation revocation hearings and hearsay evidence must first be considered. K.S.A. 22-3716(2) governs the procedures to be followed in probation revocation hearings and was approved by the Kansas Supreme Court in *State v. Rasler,* 216 Kan. 292, 532 P.2d 1077 (1975). K.S.A. 22-3716(2) provides:

"(2) Upon such arrest and detention, the probation officer shall immediately notify the court and shall submit in writing a report showing in what manner the defendant had violated the conditions of release. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charged. The hearing shall be in open court and the state shall have the burden of establishing the violation. The defendant shall have the right to be represented by counsel and

he shall be informed by the judge that if he is financially unable to obtain counsel, an attorney will be appointed to represent him. The defendant shall have the right to present the testimony of witnesses and other evidence on his behalf. Relevant written statements made under oath may be admitted and considered by the court along with other evidence presented at the hearing. If the violation is established, the court may continue or revoke the probation or suspension of sentence, and may require the defendant to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed."

## K.S.A. 60-460 provides:

"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except . . . ."

The United States Supreme Court has addressed the procedural safeguards to be afforded a defendant during parole and probation revocation hearings. In *Morrissey v. Brewer,* 408 U.S. 471, 33 L.Ed.2d 484, 92 S.Ct. 2593 (1972), a case involving due process requirements in parole revocation proceedings, the court outlined the minimum requirements of due process in such hearings. The same minimum requirements were approved and applied for probation revocation hearings in *Gagnon v. Scarpelli,* 411 U.S. 778, 36 L.Ed.2d 656, 93 S.Ct. 1756 (1973). They include:

" '(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.' *Morrissey v. Brewer* [408 U.S.], at 489." *Gagnon v. Scarpelli,* 411 U.S. at 786.

The court carefully remarked that parole and probation revocation hearings are not the same as criminal prosecutions. Rather, the proceedings should be sufficiently flexible "to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey v. Brewer,* 408 U.S. at 489.

In the Kansas cases concerning probation revocation proceedings, *Gagnon v. Scarpelli* and *Morrissey v. Brewer* have been acknowledged and their principles generally applied. See, *e.g., State v. Rasler,* 216 Kan. 292; *Toman v. State,* 213 Kan. 857, 518

P.2d 502 (1974). Several general rules have emerged. Proof beyond a reasonable doubt is not required to establish a violation of a condition of probation. Rather, a preponderance of the evidence is sufficient. *State v. Rasler,* 216 Kan. 292. The trial court may exercise its discretion to revoke probation only after a probation violation has been established. *Swope v. Musser,* 223 Kan. 133, 573 P.2d 587 (1977); K.S.A. 22-3716.

With respect to the hearsay objections lodged by the defendant, however, neither the Supreme Court nor this court has squarely addressed whether hearsay evidence alone is sufficient to prove a violation of a condition of probation. Two cases, however, have touched upon the question.

In *State v. Nelson,* 196 Kan. 592, 412 P.2d 1018 (1966), the defendant in a revocation hearing contended the trial court relied upon hearsay in its decision revoking his probation. The Supreme Court conceded for argument only that the court may have improperly admitted hearsay testimony. However, as there was sufficient competent admissible evidence to show defendant breached his probation, the decision remained undisturbed.

This court, in *State v. Guhl,* 3 Kan. App. 2d 59, 588 P.2d 957, *rev. denied* 225 Kan. 846 (1979), concluded that the trial court at a probation revocation hearing erroneously admitted as a business record a letter from a drug rehabilitation institution where the defendant had been sent as a condition of his probation. The court found that the letter did not fall within the business record exception to the hearsay rule, K.S.A. 60-460($m$), because the institution was not a part of the local probation office and no foundation for its admission had been laid. The court acknowledged that K.S.A. 22-3716 permits admission of written documents not otherwise admissible if relevant and made under oath. As in *Nelson,* however, the court found sufficient evidence to uphold finding the defendant violated the terms of his probation.

Authority from foreign jurisdictions indicates that whether hearsay evidence is admissible turns largely on the facts of each case. Some states have held that hearsay alone or an unreasonable abundance thereof is insufficient to sustain the prosecution's burden to establish the violation of a probation. *State v. Caron,* 334 A.2d 495 (Me. 1975). See also *State v. Sussmann,* 374 So. 2d 1256 (La. 1979); *Turner v. State,* 293 So. 2d 771 (Fla. App. 1974). Other jurisdictions allow the use of hearsay in probation revoca-

tion proceedings whenever the fact finder has made an express order finding good cause for not allowing confrontation of witnesses. This requirement is derived directly from one of the minimum requirements of due process outlined in *Morrissey v. Brewer,* 408 U.S. 471. See *Com. v. Rossetti,* 255 Pa. Super. Ct. 524, 388 A.2d 1090 (1978); *State v. Marlar,* 20 Ariz. App. 191, 511 P.2d 204 (1973); *State v. DeRoche,* _____ R.I. _____, 389 A.2d 1229 (1978). *Cf. Prellwitz v. Berg,* 578 F.2d 190 (7th Cir. 1978), (where the court upheld the admission of a report of a defendant's former probation officer and testimony based thereon. The court found the trial court did not err by allowing use of the hearsay without a showing of good cause for not producing the hearsay declarant. It found that the probation officer's report was a conventional substitute for oral testimony recognized as permissible in *Morrissey* and *Gagnon* and did not violate the defendant's right to confrontation).

Considering these general principles together with the provisions of K.S.A. 22-3716(2) and our rules on the admissibility of hearsay testimony, it must be concluded that hearsay testimony is not admissible in probation revocation proceedings except as provided by K.S.A. 22-3716. Accordingly, the defendant's motion for dismissal of the proceedings should have been granted as Barber's hearsay testimony was improperly admitted. As this constituted the only evidence introduced by the State, it was unable to demonstrate by a preponderance of the evidence that defendant had violated the terms and conditions of his probation.

This conclusion does not end our inquiry, however. After the State rested, the defendant decided to present testimony from his wife, his brother-in-law and himself. Therefore, we must decide whether or not the defendant waived his right to assert reversible error for the trial court's improper reliance on hearsay evidence. Defendant maintains that when it became apparent that the trial court would not dismiss the proceedings, he was forced to come forward with evidence in an attempt to mitigate his failure to comply with the terms of his probation, since the mere fact that a person has violated a condition of probation does not automatically require revocation. K.S.A. 22-3716(2).

The equitable argument made by the defendant that he should not be penalized for actions he was forced or induced to take as a result of the alleged erroneous rulings of the trial court seems to

be answered by *State v. Blue*, 225 Kan. 576, 592 P.2d 897 (1979), which held that a defendant who presents evidence after a trial court has overruled a motion for acquittal at the close of the prosecution's case waives error in the denial of that motion. *State v. Blue* further provides that when considering a motion for acquittal made at the close of all the evidence, the trial court must consider all the evidence when ruling on that motion. Although distinguishable from this case because it involved a full scale criminal prosecution rather than a probation revocation hearing, we conclude that the principles of *State v. Blue* are applicable in this action. Accordingly, we hold that the defendant waived his right to assert reversible error on the ground that the State failed to establish a probation violation because it relied solely on inadmissible hearsay evidence, because he introduced testimony that clearly proved such a violation by a preponderance of the evidence.

The defendant next contends that the trial court abused its discretion by revoking his probation. Whether to revoke or to continue probation after a violation of the conditions of the probation have been established must be within the sound discretion of the trial court. *Swope v. Musser*, 223 Kan. 133; K.S.A. 22-3716.

The defendant has failed to demonstrate that the trial court abused its discretion by revoking his probation. Judicial discretion must reflect sound judgment, may not be exercised arbitrarily, and must be exercised with regard to what is right and just under the law and the particular facts and circumstances of the case. *State v. Collins*, 195 Kan. 695, 408 P.2d 639 (1965). The record certainly shows that the trial court could have easily found that the defendant had not exhibited a conscientious, sincere desire to cooperate with the terms and rules of the work release program, and took his responsibilities thereunder very lightly, considering the seriousness of this obligation.

Defendant's further contention that the trial court abused its discretion by imposing the maximum sentence of three to ten years in case No. 51,154 instead of the minimum term of one to five years, pursuant to K.S.A. 1979 Supp. 21-4501, is difficult to review because the record does not contain all the relevant materials that the trial court may have relied upon in originally imposing the sentence. Clearly, K.S.A. 22-3716(2) authorizes the

trial court to require the defendant to serve the sentence originally imposed once probation has been revoked. The court reviewed the report of the Diagnostic Center which stated that the defendant was not able to appropriately express his anger and had further failed to demonstrate any remorse or guilt feelings on account of the offenses he had committed. Indeed, the Diagnostic Center did not initially recommend that the defendant be placed in a work release program, but rather that he remain in custody in a structured environment. The record reflects that at first the trial court had decided not to incarcerate defendant. Now, however, the trial court believed the defendant needed to be in a structured program to learn to meet his responsibilities.

A sentence falling within the statutory limits will not normally be disturbed upon appeal, absent a showing that the trial court abused its discretion. *State v. Buckner,* 223 Kan. 138, 574 P.2d 918 (1977). Defendant contends that the trial court abused its discretion by imposing the maximum sentence. However, the trial court had other information which was adverse to the defendant and which apparently influenced its decision to impose the maximum sentence.

We find that imposition of the maximum sentence by the trial court does not constitute an abuse of discretion.

Judgment is affirmed.