(888 P.2d 399)
No. 70,988

STATE OF KANSAS, *Appellee*, v. MICHAEL A. MILLER, *Appellant*.

Opinion filed January 20, 1995.

*Cortland E. Berry*, of Cortland E. Berry Legal Clinic, of Reading, for the appellant.

*Joe E. Lee*, assistant county attorney, *Rodney H. Symmonds*, county attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before PIERRON, P.J., LEWIS, J., and JOHN ANDERSON III, District Judge, assigned.

PIERRON, J.: Michael A. Miller appeals an order revoking his probation. He contends he was denied his right of confrontation because the only evidence presented to establish a violation of the conditions of his probation was in the form of sworn affidavits and attached memoranda. In addition, he contends the State failed to lay an adequate foundation for the admission of the af-

fidavits. He also alleges the trial court showed partiality, prejudice, or corrupt motive in revoking his probation.

After a jury trial, defendant was convicted of possession of co-caine, a class C felony, and possession of marijuana and drug paraphernalia, class A misdemeanors. He was on probation at the time of these offenses. He was sentenced to concurrent sentences of 4 to 10 years for possession of cocaine, 1 year for possession of marijuana, and 6 months for possession of drug paraphernalia.

The trial court heard defendant's motion to modify sentence and, based on the recommendation of the State Reception and Diagnostic Center, placed him on probation with community corrections for a period of three years. The court imposed the standard conditions of probation, including an order that defendant report to a community corrections officer as directed.

The court also imposed several special conditions. Among them was that defendant was not to consume alcohol or illegal drugs. Furthermore, he was ordered to "submit to blood, urine or breath tests as requested by his probation officer or any law enforcement officer to detect the use of illegal drugs or alcohol." The probation order contained a warning to him that "probation will be revoked if any illegal drugs or alcohol are discovered." The court permitted defendant to transfer his probation to Johnson County Community Corrections.

Five weeks later, the State filed a motion to revoke his probation. In support of its motion, the State submitted two affidavits. The first affidavit was that of Ted VanDonge, a Lyon County Community Corrections Officer, alleging defendant had violated three conditions of his probation. VanDonge's affidavit offered no details regarding the alleged violations; however, it referred to an affidavit submitted by Fred Decker, a Johnson County Community Corrections Officer.

Decker's affidavit alleged defendant had violated "special condition #1" of his probation, which prohibited the consumption or possession of alcohol or illegal drugs. According to Decker, "[o]n June 20, 1993, [defendant] tested positive for cannabinoids, and on August 16, 1993, tested positive [for] cannabinoids and cocaine." He further alleged that defendant had not complied with

"special condition #8," which required him to submit to urinalysis tests when requested by his probation officer. Decker's affidavit stated that "[o]n August 13, 1993, [defendant] did not complete UA test as directed." Finally, Decker alleged defendant failed to report to community corrections officers on August 23, 1993, and August 25, 1993, as directed, in violation of "condition #3." In support of each of the alleged violations, Decker referred the attention of the reader to other documents attached to his affidavit, *i.e.*, the State's exhibits Nos. 5 and 6.

Based on the affidavits of VanDonge and Decker, the trial court issued an arrest warrant on September 16, 1993. On November 9, 1993, the State's motion to revoke probation was heard by the District Court of Lyon County. The State's evidence consisted of the testimony of VanDonge and six exhibits. The exhibits included four affidavits and two attached memoranda. Defendant did not present any evidence in his defense.

VanDonge was the only witness called by the State. He testified he had been assigned to the case after it was transferred to Johnson County and he had not had any contact with defendant since being assigned. However, VanDonge had maintained contact with the authorities from Johnson County regarding defendant's case and had received information regarding defendant from Decker.

VanDonge identified exhibits Nos. 1 through 6 as documents forwarded to him by Decker. Defense counsel objected to the admission of all of the State's exhibits. In particular, he objected to the admission of exhibit No. 4, Decker's affidavit alleging the violations, as lacking any foundation. Defense counsel also objected to exhibits Nos. 1 through 6 as being hearsay and not properly offered as business records.

The State responded to defendant's objection by citing *State v. Yura*, 250 Kan. 198, 825 P.2d 523 (1992), as authority for admitting the documents. Defense counsel again objected to the admission of the exhibits, particularly Decker's affidavit alleging the probation violations. Among the violations, Decker alleged that "[o]n June 20, 1993, [defendant] tested positive for cannabinoids." Defense counsel argued that defendant was still in jail on June 20, 1993, and that such a test result was impossible.

Based on this alleged error, defendant questioned the reliability of the other exhibits.

The trial court overruled defendant's objections, stating:

"I'm familiar with the decision that's been cited. The documents have met the foundation tests for admissibility. In my opinion the objection goes to the weight of the credit that may be given to the weight of the documents, and not to their admissibility. Accordingly, Plaintiff's exhibits 1 through 6 inclusive are admitted."

Aside from Decker's affidavit, three other affidavits were admitted. All three related to the collection and testing of defendant's urine specimen on August 16, 1993. Exhibit No. 1 was an affidavit of Cliff Group, an employee of Health Productivity Systems, Inc., in Kansas City, Missouri. Group's affidavit stated he was personally present during the collection of a urine sample from defendant on August 16, 1993.

Exhibit No. 2 was an affidavit of a toxicological chemist, Suzanne Fischer. Fischer's affidavit stated she was employed at Physician Reference Laboratory. Further, a specimen of defendant's urine was received by the laboratory and tested on August 18, 1993. The specimen "tested positive for the presence of cocaine metabolites (benzoylecgonine) by gas chromatography/mass spectrometry."

Exhibit No. 3 was an affidavit of Philip Cravens, owner, president, and chief technologist of Health Productivity Systems, Inc. In his affidavit, Cravens, a certified medical technologist, stated he had analyzed defendant's urine specimen, dated August 16, 1993. The specimen indicated the presence of cocaine metabolites (benzoylecgonine) and cannabinoids (marijuana).

The remaining exhibits, Nos. 5 and 6, were memoranda written by Decker and directed to Peggy Brown, Deputy Director, 5th Judicial District Community Corrections. In each of the memoranda, Decker indicated defendant "may have violated special conditions #1 and #8 of the Order of Probation." Conditions No. 1 and No. 8 prohibited defendant from consuming alcohol or illegal drugs and directed him to submit to urinalysis, respectively. The memoranda further explained the details of the alleged violations.

After the introduction of the exhibits, the State argued defendant's probation should be revoked and he should be incarcerated

for the remainder of the original sentence. After noting the standard of proof necessary to revoke probation is a preponderance of the evidence, the trial court found the six exhibits substantiated the allegations made in the affidavit of Decker. The trial court stated:

"Despite the assertions of the Defendant in this case that the information is not correct, there is no evidence to indicate to the contrary here today. There's simply been no evidence offered by the Defendant whatsoever. Under those circumstances, I think the preponderance of evidence test has been well met. Therefore, it is . . . my finding that there have been violations of the terms and conditions of the assignment to Community Corrections. Number one, special condition number one, there was positive testing for the presence of both cannabinoids and cocaine on August 16, 1993. Secondly, there is evidence to indicate a violation of special condition number 8, that being the failure to complete as directed a urinalysis examination on August 13. Finally, there is a violation of the third special condition, that being failure to report as directed on at least two occasions."

After concluding defendant had violated the conditions of his probation, the trial court considered its options. After recounting defendant's criminal history and his prior conduct while on probation, the court stated: "It is apparent, however, that Mr. Miller under his present assignment is not capable of operating under the supervision level expected by this Court. Mr. Miller, your assignment and granted probation is therefore revoked."

Defendant raises two issues on appeal.

The first issue involves the relationship between defendant's right to confront adverse witnesses and the State's use of affidavits to establish a violation of probation. Defendant argues his Sixth Amendment right to confront and cross-examine the witnesses against him was violated because the affidavits and attached memoranda upon which his revocation was based were constitutionally insufficient.

In Kansas, "the determination of whether an order of probation should be revoked is a matter within the trial court's discretion." *State v. Duke*, 10 Kan. App. 2d 392, 394, 699 P.2d 576 (1985). On appeal, the trial court's order revoking probation will only be disturbed if this court finds an abuse of that discretion.

"Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when

no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *State v. Baker*, 255 Kan. 680, Syl. ¶ 9, 877 P.2d 946 (1994).

K.S.A. 1993 Supp. 22-3716(b) governs the procedure to be followed in probation revocation hearings. In *State v. Rasler*, 216 Kan. 292, 296, 532 P.2d 1077 (1975), the Kansas Supreme Court held that 22-3716 "meets all constitutional requirements in such proceedings." K.S.A. 1993 Supp. 22-3716(b) provides in relevant part:

"The hearing shall be in open court and the state shall have the burden of establishing the violation. The defendant shall have the right to be represented by counsel and shall be informed by the judge that, if the defendant is financially unable to obtain counsel, an attorney will be appointed to represent the defendant. The defendant shall have the right to present the testimony of witnesses and other evidence on the defendant's behalf. Relevant written statements made under oath may be admitted and considered by the court along with other evidence presented at the hearing."

In *Rasler*, the court found that proof beyond a reasonable doubt is not required to establish a violation of a condition of probation. Rather, a preponderance of the evidence is sufficient. 216 Kan. at 295.

In *State v. Yura*, 250 Kan. 198, the Kansas Supreme Court addressed the relationship between the admissibility of affidavits at a probation revocation hearing and a defendant's right to confront adverse witnesses. In determining whether affidavits were admissible at a revocation hearing, the court employed a two-part analysis. First, the court concluded that affidavits were technically admissible under our rules of evidence. The court stated:

"K.S.A. 1990 Supp. 60-460(b) provides that affidavits, to the extent admissible by the statutes of this State, are an exception to the inadmissibility of hearsay. Because relevant written statements made under oath are admissible under K.S.A. 1990 Supp. 22-3716(2) in probation revocation hearings, such statements are a K.S.A. 1990 Supp. 60-460(b) exception to the inadmissibility of hearsay. The trial court is vested with discretion in admitting such statements under K.S.A. 1990 Supp. 22-3716(2)." 250 Kan. at 206-07.

After concluding that our rules of evidence authorize the admission of sworn statements at a probation revocation hearing,

the *Yura* court addressed the more difficult question regarding the constitutionality of admitting such evidence. In its analysis, the Kansas Supreme Court relied on *Morrissey v. Brewer*, 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972), and *United States v. Bell*, 785 F.2d 640 (8th Cir. 1986).

In *Morrissey*, the United States Supreme Court found that "revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." 408 U.S. at 480. Nevertheless, a probationer has a limited liberty interest and is entitled to minimal due process rights. See *Gagnon v. Scarpelli*, 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973). In *Morrissey*, 408 U.S. at 488-89, the Supreme Court outlined the minimum requirements of due process as applied to parole revocation hearings. Probationers enjoy the same procedural rights accorded parolees. *Gagnon*, 411 U.S. at 782.

The minimum requirements of due process in a parole or probation revocation hearing include "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." 408 U.S. at 489. The *Morrissey* Court, however, emphasized:

"[T]here is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." 408 U.S. at 489.

In *Yura*, the Kansas Supreme Court concluded that *"Morrissey* provides that affidavits may be admitted for good cause shown without violating the probationer's right to confront witnesses." *Yura*, 250 Kan. at 207. The court then adopted the rationale of *United States v. Bell*, 785 F.2d 640, for determining what the government must show to establish "good cause."

"The *Bell* court stated that in a probation revocation proceeding the trial court must balance the probationer's right to confront a witness against the grounds asserted by the government for not requiring confrontation. [Citations omitted.] *Bell* listed two factors to be evaluated in examining the government's basis for dispensing with confrontation: (1) the explanation the government offers of why

confrontation is undesirable or impractical, and (2) the reliability of the evidence which the government offers in place of live testimony." *Yura*, 250 Kan. at 208.

In *Yura*, the court noted that "the trial court must balance the probationer's right to confront an adverse witness against the grounds asserted by the government for not requiring confrontation." 250 Kan. at 208. A review of the revocation transcript in this case, however, reveals that the State did not offer an explanation of why confrontation was undesirable or impractical. The only evidence offered by the State that can be roughly construed as grounds for dispensing with defendant's right of confrontation was the testimony of VanDonge.

VanDonge testified that Decker, the affiant of exhibit No. 4, worked in Kansas City, Missouri. VanDonge was not sure where the other affiants worked. At least one of the labs that tested defendant's urine specimen was located in Kansas City, Kansas. The State did not present any other evidence showing the affiants could not be present at the hearing or that procuring their appearance would involve an unjustifiable expense. Furthermore, the State did not offer an explanation of why confrontation would be undesirable or impractical. See *Bell*, 785 F.2d at 643. Thus, the trial court had no basis for the conclusion that there was "good cause for not allowing confrontation." *Morrissey*, 408 U.S. at 489.

At the revocation hearing, the State argued the exhibits were admissible under *Yura*. On appeal, the State contends that "[b]y reference to the *Yura* decision, the State was adopting the arguments made by the prosecution in that case." The State then goes on to offer an explanation of why confrontation is undesirable or impractical. This argument ignores the fact that the State failed to provide such an explanation at the hearing. Furthermore, the trial court was required to balance the State's explanation against defendant's right of confrontation prior to admitting the evidence. An explanation offered on appeal is not sufficient.

In *Morrissey*, the Supreme Court stated that in a revocation proceeding a defendant has the right to confront and cross-examine adverse witnesses, "unless the hearing officer *specifically* finds good cause for not allowing confrontation." (Emphasis added.) 408 U.S. at 489. After reviewing the record in this case,

it is clear the trial court made no such finding. During the revocation hearing, the trial court stated: "I'm familiar with the decision [*Yura*] that's been cited. The documents have met the foundation tests for admissibility. In my opinion the objection goes to the weight of the credit that may be given to the weight of the documents, and not to their admissibility."

The trial court failed to make a specific finding that good cause existed for not allowing confrontation. Thus, the threshold requirement for admitting the affidavits, and dispensing with defendant's right of confrontation, was not satisfied. The trial court abused its discretion by improperly denying defendant his right to confront the witnesses against him. See *Gaze v. State*, 521 A.2d 125, 128 (R.I. 1987) (where the record contains no evidence to establish that the hearing officer ever made such a good-cause determination, defendant was denied the commensurate due-process protection).

On remand, if the trial court finds that good cause has been shown, the affidavits may properly be admitted. We note defendant's concern that admitting this type of evidence too easily could "reduce the hearing to a battle of affidavits." However, the requirement that good cause be shown by the State will prevent unjustifiable dispensing with defendant's right to confrontation. In *Mason v. State*, 631 P.2d 1051, 1056 (Wyo. 1981), the Wyoming Supreme Court noted that "the State must make a good-faith attempt to produce the witnesses at a probation- or parole-revocation hearing or else show cause why they cannot appear." This approach will insure that defendant's right of confrontation is not lightly discarded.

The trial court should engage in this balancing test for each affidavit before they are admitted. In *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 89 L. Ed. 2d 674, 106 S. Ct. 1431 (1986), the United States Supreme Court found that "[w]hile some constitutional claims by their nature require a showing of prejudice with respect to the trial as a whole, [citation omitted] the focus of the Confrontation Clause is on individual witnesses."

Although it is necessary to remand this case, defendant raises an argument that is not dispensed with by application of *Yura*

and *Bell* and is likely to recur on remand. Defendant argues the State is required to submit other evidence, beyond sworn statements, to establish a violation of the conditions of probation; otherwise, a defendant's constitutional right to confront adverse witnesses is meaningless.

The courts of this state have never directly addressed the issue of whether admissible hearsay evidence can be the sole basis for revoking probation. In *State v. Carter*, 5 Kan. App. 2d 201, 614 P.2d 1007 (1980), this court commented on the issue, but did not resolve the question. The court stated:

"Some states have held that hearsay alone or an unreasonable abundance thereof is insufficient to sustain the prosecution's burden to establish the violation of a probation. [Citations omitted.] Other jurisdictions allow the use of hearsay in probation revocation proceedings whenever the fact finder has made an express order finding good cause for not allowing confrontation of witnesses. This requirement is derived directly from one of the minimum requirements of due process outlined in *Morrissey v. Brewer,* 408 U.S. 471." 5 Kan. App. 2d at 206-07.

Defendant erroneously relies on *Carter* as support for his position. In *Carter*, this court held that "[i]nadmissible hearsay testimony alone will not establish a probation violation to support a revocation of probation." 5 Kan. App. 2d 201, Syl. ¶ 2. A review of the fact of that case, however, reveals that it presented an entirely different issue and is not controlling. In *Carter*, this court found the only evidence which was presented to establish a violation of the conditions of probation was improperly admitted. Thus, the court concluded:

"[T]he defendant's motion for dismissal of the proceedings should have been granted as Barber's hearsay testimony was improperly admitted. As this constituted the only evidence introduced by the State, it was unable to demonstrate by a preponderance of the evidence that defendant had violated the terms and conditions of his probation." 5 Kan. App. 2d at 207.

On remand, if the trial court determines the evidence is admissible after applying the two-factor test announced in *Bell*, there would be admissible evidence to establish the violation. Therefore, this case is factually different from *Carter*.

As noted in *Carter*, there is authority from other states for defendant's position that hearsay evidence alone is insufficient to

establish a violation of probation. For example, in *Colina v. State*, 629 So. 2d 274, 275 (Fla. Dist. App. 1993), the court held that "[a]lthough hearsay evidence is admissible in a probation revocation hearing, proving a violation of probation solely by hearsay evidence is improper." See also *Stanley v. State*, 587 So. 2d 1258, 1259 (Ala. Crim. App. 1991) (holding that revocation of a defendant's probation based solely on hearsay testimony of probation officer was error); *State v. Carey*, 30 Conn. App. 346, 354, 620 A.2d 201 (1993) (finding that "[h]earsay evidence cannot be the basis of probation revocation if it is wholly unsupported by corroborative evidence"); *People v. Krzykowski*, 121 App. Div. 2d 831, 832, 504 N.Y.S.2d 262 (1986) (concluding that hearsay may be received in probation revocation hearing, but will not alone satisfy standard of proving violation by preponderance of evidence).

However, there is also support for the position that reliable hearsay evidence alone is a sufficient basis to support probation revocation. In an exceptionally well-reasoned opinion, *Commonwealth v. Durling*, 407 Mass. 108, 551 N.E.2d 1193 (1990), the Supreme Judicial Court of Massachusetts concluded that probation could be revoked based solely on reliable hearsay evidence without infringing upon defendant's due process right to confront witnesses. After noting that "the requirements of the due process clause have, at their base, the goal of providing an accurate determination whether revocation is proper," 407 Mass. at 116, the court explained:

"In situations where the Commonwealth seeks to rely on evidence not subject to cross-examination, the due process touchstone of an accurate and reliable determination still remains. The proper focus of inquiry in such situations is the reliability of the evidence presented. Even though standard evidentiary rules do not apply to probation revocation hearings, the first step is to determine whether the evidence would be admissible under those rules, including the exceptions to the hearsay rule. Evidence which would be admissible under standard evidentiary rules is presumptively reliable. [Citation omitted.] If the proffered evidence is not admissible under standard evidentiary rules, then a court must independently look to the reliability of that evidence. Unsubstantiated and unreliable hearsay cannot, consistent with due process, be the entire basis of a probation revocation. When hearsay *is* reliable however, then it *can* be the basis

of a revocation. In our view, a showing that the proffered evidence bears substantial indicia of reliability and is substantially trustworthy is a showing of good cause obviating the need for confrontation. We agree with the observation of the United States Court of Appeals for the Seventh Circuit on this point that 'if the proffered evidence itself bears substantial guarantees of trustworthiness, then the need to show good cause vanishes.' *Egerstaffer v. Israel*, 726 F.2d 1231, 1234 (7th Cir. 1984). We caution, however, that when hearsay is offered as the only evidence of the alleged violation, the indicia of reliability must be substantial [citation omitted] because the probationer's interest in cross-examining the actual source (and hence testing its reliability) is greater when the hearsay is the only evidence offered. Thus, the hearsay must be substantially reliable to overcome that interest." 407 Mass. at 117-18.

In *Yura,* our Supreme Court chose not to go as far as the Seventh Circuit in concluding that the need to show good cause vanishes if the evidence bears substantial guarantees of reliability. Nevertheless, we are convinced that after a finding of good cause, admissible hearsay evidence that possesses a substantial indicia of reliability may be the sole basis for concluding that a defendant violated the conditions of probation without infringing upon his or her right of confrontation.

At the revocation hearing in this case, the trial court stated:

"Despite the assertions of the Defendant in this case that the information is not correct, there is no evidence to indicate to the contrary here today. There's simply been no evidence offered by the Defendant whatsoever. Under those circumstances, I think the preponderance of evidence test has been well met."

On appeal, defendant argues the trial court improperly shifted the burden to him. This argument lacks merit. In *State v. Guhl,* 3 Kan. App. 2d 59, 62, 588 P.2d 957, *rev. denied* 255 Kan. 846 (1979), this court noted that once the State presented prima facie proof of a violation of a condition of probation, "[d]efendant had the burden of coming forward with evidence to meet and overcome this prima facie proof." As in *Guhl,* defendant must present evidence in his defense once the State has presented prima facie proof of a violation. Defendant failed to sustain this burden. This court has previously held that the "right against self-incrimination [does] not extend to the probation revocation hearing." *State v. Aldape,* 14 Kan. App. 2d 521, 526, 794 P.2d 672, *rev. denied* 247 Kan. 705 (1990). Thus, it is not improper for the court to rec-

ognize defendant's silence in concluding that the evidence presented by the State established a violation by a preponderance of the evidence.

Finally, defendant contends the State failed to lay a proper foundation for the admission of the sworn statements and memoranda. As support for this proposition, defendant relies on K.S.A. 1993 Supp. 22-3716(b), which provides in part: "Relevant written statements made under oath may be admitted and considered by the court *along with other evidence* presented at the hearing." (Emphasis added.) In his brief, defendant states that "[i]f the State wanted to get this information in, it needed more than a messenger. This is what the requirement of 'other evidence' means." Defendant construes the language "along with other evidence" in K.S.A. 1993 Supp. 22-3716(b) to impose a restriction on the admissibility of the affidavits.

Interpretation of a statute is a question of law. *State v. Donlay*, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993). Therefore, our review is de novo. We find defendant's interpretation lacks merit.

There is a presumption that the legislature does not intend to enact useless or meaningless legislation. *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992). The purpose of the relevant language in 22-3716(b) is to allow the presentation of sworn statements in a revocation hearing. Under defendant's interpretation, this section would actually restrict the presentation of such sworn statements by requiring the State to present additional evidence as a precondition to presenting the affidavits. This would defeat the purpose of this portion of the statute. We conclude the language "along with other evidence" merely authorizes the trial court to consider the sworn statements, as it would any other evidence that may have been presented at the hearing.

The case cited by defendant, *State v. Guhl*, 3 Kan. App. 2d 59, deals with the foundation requirements for admitting business records under K.S.A. 1993 Supp. 60-460(m). In this case, the exhibits were admitted under K.S.A. 1993 Supp. 60-460(b) and K.S.A. 1993 Supp. 22-3716(b), not K.S.A. 1993 Supp. 60-460(m). The foundation requirements for admitting affidavits would appear to differ substantially from the foundation necessary for ad-

mitting business records. Thus, *Guhl* is not controlling. The State met its burden of laying an adequate foundation.

In *United States v. Burton,* 866 F.2d 1057 (8th Cir. 1989), the Eighth Circuit considered whether a defendant's confrontation rights were violated by admitting written reports at a probation revocation hearing, absent live witness testimony on foundation. 866 F.2d at 1058-59. The Eighth Circuit, relying on *United States v. Bell,* 785 F.2d 640, found that admitting such reports without foundation was not a violation of a defendant's right to confront adverse witnesses. 866 F.2d at 1059.

Defendant also contends the trial court showed partiality, prejudice, or corrupt motive in revoking his probation. According to defendant, the trial court showed prejudice against him because of his race. Defendant acknowledges, however, that there is no direct proof of this.

"Allegations of judicial misconduct during trial must be decided on the particular facts and circumstances surrounding the alleged misconduct. The conduct complained of must be examined and a determination made as to whether it was prejudicial to substantial rights." *State v. Thomas,* 252 Kan. 564, 570, 847 P.2d 1219 (1993). Defendant bears the burden to prove error in the judge's conduct. See 252 Kan. at 567-68; *State v. Stoops,* 4 Kan. App. 2d 130, 133, 603 P.2d 221 (1979).

A review of defendant's argument reveals that he is restating the issues raised regarding the trial court's decision to admit the exhibits. Defendant merely reframes the arguments to equate the trial court's erroneous application of *Yura* to partiality or prejudice. As we have previously addressed defendant's due process arguments, we need not address them again. Suffice it to say, erroneous rulings of the trial court do not require the conclusion that the trial court showed partiality or prejudice. Defendant bears the burden of proving judicial misconduct. As defendant notes, there is no direct proof of misconduct. Thus, defendant has not met his burden.

We reverse and remand with instructions that the trial court consider the exhibits individually in light of the two-factor test enunciated in *Yura.*