NOT DESIGNATED FOR PUBLICATION

No. 125,629

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KYLE PATRICK HUNT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; THOMAS G. LUEDKE, judge. Submitted without oral argument. Opinion filed November 17, 2023. Reversed and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, deputy district attorney, *Michael Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ATCHESON, P.J., ISHERWOOD and HURST, JJ.

PER CURIAM: Defendant Kyle Patrick Hunt correctly argues the Shawnee County District Court improperly admitted and considered hearsay evidence and violated his conditional constitutional right to confront witnesses against him when it revoked his probation. The inadmissible hearsay was the only evidence establishing some of the probation violations the district court cited in reaching its decision to revoke. And the record does not otherwise plainly show the district court necessarily would have revoked Hunt's probation on the properly proved violations. We, therefore, reverse the revocation and remand to the district court with directions to consider only the properly admitted evidence and to render a new ruling based on that evidence.

1

Hunt was required to comply with the Kansas Offender Registration Act, K.S.A. 22-4901et seq., as a drug offender. Hunt failed to register and in November 2021 pleaded guilty to violating KORA, a severity level 6 nonperson felony. Based on his criminal history, Hunt faced a presumptive prison sentence. The district court imposed a standard guidelines sentence of 36 months in prison followed by postrelease supervision for 24 months but granted Hunt a dispositional departure and placed him on probation for 24 months. Because Hunt lived in Butler County, a probation officer there supervised him.

In March 2022, Hunt rolled a pickup he was driving in rural Butler County. He was found unconscious several miles from the scene of the one-vehicle mishap. The pickup had been reported as stolen. Butler County sheriff's deputies found illegal drugs and drug paraphernalia, a prescription pill bottle belonging to Hunt's mother, and mail addressed to Hunt's residence in the pickup. Hunt disclaimed any recollection of how the accident occurred and otherwise declined to discuss the circumstances with law enforcement officers. Hunt was charged with an array of crimes in Butler County related to that incident.

In July 2022, Seth Hanes, a Shawnee County probation officer, prepared an affidavit alleging Hunt violated the conditions of his probation in various ways. Hanes appended an affidavit from Ed Ketley, the Butler County probation officer directly supervising Hunt. Based on those materials, the State requested that the Shawnee County District Court, which retained formal jurisdiction over this case and Hunt's probation, revoke the probation. Hanes' affidavit identified probation violations based on Hunt's criminal conduct associated with the pickup, his failure to report in Butler County, his unauthorized use of drugs or alcohol, and his failure to participate in substance abuse treatment. But the affidavit outlined no facts supporting those allegations and referred, instead, to Ketley's affidavit.

2

At a probation revocation hearing in early September 2022, the State called one of the Butler County deputies who investigated the March pickup rollover. The deputy testified about the condition and contents of the pickup at the scene of the rollover, the discovery of Hunt unconscious in a ditch near a dirt road about 3 miles away, and the vehicle having been reported stolen. Hanes was the State's only other witness. When he began to describe Hunt's so-called technical violations—the admission to using marijuana and methamphetamine, the failure to report to the Butler County probation officer on and after May 8, and the failure to participate in treatment—Hunt's lawyer lodged an objection first based on hearsay and then additionally on a violation of a defendant's conditional constitutional right to confront adverse witnesses during a probation hearing.

In response to the hearsay objection, the prosecutor had Hanes testify about a statewide database available to probation officers. Probation officers log notes of their contacts with probationers in the database and report on the failure of probationers to abide by their conditions of probation. According to Hanes, probation officers regularly access the database and rely on information maintained there. The district court found the database to be a business record under K.S.A. 60-460(m) and, therefore, an exception to the general rule excluding hearsay as evidence. The district court allowed Hanes to testify to the content of the notes and other information Ketley entered in the database, although copies of those entries were never offered or admitted as evidence. The district court did not address Hunt's confrontation objection.

After hearing argument from the lawyers, the district court ruled from the bench that Hunt had violated the terms of his probation. The district court found the technical violations had been proved by a preponderance of the evidence through Hanes' testimony. The district court also found sufficient evidence that Hanes committed new crimes in March by leaving the scene of an accident—the pickup rollover—and driving while suspended. Both are misdemeanors. K.S.A. 8-262 (driving while suspended); K.S.A. 8-

3

1602 (duty to remain at scene of accident resulting in personal injury or property damage). The district court apparently discounted the drugs and drug paraphernalia found in the pickup, saying: "That could be attributed to Mr. Hunt; maybe not. I don't know about that."

In considering an appropriate disposition in light of the violations, the district court pointed to the comparatively short time Hunt had been on probation when he rolled the pickup and mentioned the dispositional departure he received at sentencing. The district court suggested the time frame "didn't bode well" for Hunt if he were to remain on probation. But the district court did not again refer to the departure sentence. The district court went on to tell Hunt: "Until you make up your mind that you're going to stay away from this stuff, there's nothing else to do but pay the price." We take the reference to "stuff" to be Hunt's ongoing drug abuse and his unwillingness to participate in treatment. The district court ordered Hunt to serve the 36-month prison sentence. Hunt has appealed.

ANALYSIS

On appeal, Hunt says the district court improperly admitted evidence about the multiple technical violations and, in turn, that evidence impermissibly influenced the decision to revoke his probation. Given the record, we are constrained to agree. The appropriate remedy entails a remand for a limited hearing at which the district court should make new or supplemental findings based on only the evidence that has already been properly admitted.

The State bears the burden of proving alleged probation violations by a preponderance of the evidence. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). The rules of evidence generally apply in revocation hearings. See *State v. Yura*, 250 Kan. 198, 206-07, 825 P.2d 523 (1992) (recognizing hearsay limitations and

4

exceptions in K.S.A. 60-460 applicable to probation revocation proceedings); *State v. Miller*, 20 Kan. App. 2d 378, 385-86, 888 P.2d 399 (1995); *State v. Carter*, 5 Kan. App. 2d 201, 207, 614 P.2d 1007 (1980). The Kansas Supreme Court has also recognized a qualified right of defendants to confront and cross-examine the State's witnesses in probation revocation hearings. *State v. Marquis*, 292 Kan. 925, Syl. ¶ 3, 257 P.3d 775 (2011); *Yura*, 250 Kan. at 207. The right is grounded in the Due Process Clause of the Fourteenth Amendment to the United States Constitution rather than in the Sixth Amendment protections for accused criminal defendants facing trial. *Marquis*, 292 Kan. at 929-31. The district court may dispense with the constitutional right for "good cause" if the State so requests. See 292 Kan. 925, Syl. ¶ 3. The State must establish that confrontation and cross-examination of a particular witness would be "undesirable or impractical" and the alternative evidence to be admitted comes with satisfactory indicia of reliability. 292 Kan. 925, Syl. ¶ 4. In short, allowing confrontation and cross-examination should be the default and thus the preferred option.

Having set out those legal principles, we turn to Hunt's dual attacks on the State's evidence supporting the technical probation violations. As we have outlined, the evidence consisted of Hanes' testimony recounting the entries Ketley made in the database buttressed by the district court's determination the database qualified as a business record under K.S.A. 2022 Supp. 60-460(m). First, the Kansas Rules of Evidence treat hearsay as inadmissible unless a statutory exception applies. K.S.A. 2022 Supp. 60-460. In other words, hearsay is a general rule of exclusion. If an exception applies, the evidence may not be excluded as hearsay. But the evidence is not automatically admissible for that reason. It still must be relevant, and it cannot be inadmissible for some other reason. See *State v. Bollig*, No. 115,408, 2018 WL 1976689, at *8 (Kan. App. 2018) (unpublished opinion); *State v. Otero*, No. 114,762, 2017 WL 4183208, at *6 (Kan. App. 2017) (unpublished opinion).

Assuming, the district court correctly determined the probation officers' database to be a business record satisfying the hearsay exception in K.S.A. 2022 Supp. 60-460(m), copies of the relevant entries could then be offered and received as evidence if they were otherwise admissible. K.S.A. 2022 Supp. 60-460(m) (business records exception covers "[w]ritings offered as memoranda or records of acts, conditions or events to prove the facts stated"); *In re Care & Treatment of Quary*, 50 Kan. App. 2d 296, 307, 324 P.3d 331 (2014). The exception, however, did not apply to Hanes' testimonial paraphrase of the information in the database. His testimony remained inadmissible hearsay.

Moreover, Ketley prepared the relevant entries in the databank. So Hunt had a due process right to confront and cross-examine Ketley about the alleged violations. The State never sought and the district court never granted a good-cause exception to that right, even after Hunt objected. Hanes' testimony about the technical violations was inadmissible for that reason, as well.

Apart from Hanes' inadmissible testimony, the State presented no evidence supporting the technical probation violations. The district court plainly weighed those violations in determining what to do with Hunt and necessarily erred in that respect. But the State did prove to the district court's satisfaction that Hunt violated his probation by committing the new crimes of driving while suspended and leaving the scene of an accident in March 2022. Hunt doesn't dispute the sufficiency of that proof. Either of those crimes afforded the district court a legally sufficient reason to revoke Hunt's probation rather than imposing some lesser sanction and leaving the probation in place. But that does not mean the district court necessarily would have revoked Hunt based on those offenses alone.

When a probation violation has been established, as here, the decision to revoke lies within the judicial discretion of the district court. *Gumfory*, 281 Kan. at 1170. Judicial discretion is abused if the ruling is (1) arbitrary, fanciful, or unreasonable; (2)

6

based on an error of law; or (3) based on an error of fact. *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). Typically, the party alleging an abuse of judicial discretion, here Hunt, bears the burden of showing the error. See *State v. Crosby*, 312 Kan. 630, 635, 479 P.3d 167 (2021). But if a judicial error deprives a defendant of constitutional due process protections in a probation revocation hearing, the State must persuade the reviewing appellate court "beyond a reasonable doubt" that there was "no reasonable possibility the error affected the outcome." *State v. Hurley*, 303 Kan. 575, Syl. ¶ 4, 363 P.3d 1095 (2016).

Here, the district court made an error of law in admitting the evidence establishing the technical violations and made a concomitant error of fact by relying, in part, on those violations in deciding to revoke Hunt's probation. The misstep has a constitutional due process overlay, triggering the much more exacting standard of appellate review recognized in *Hurley*.

As we have outlined, the district court concluded Hunt would be unlikely to succeed if his probation were continued and cited both the new traffic related misdemeanors and the range of technical violations. The district court seemingly pointed to Hunt's continuing abuse of illegal drugs and his refusal to participate in treatment—two of the technical violations—to underscore its conclusion. The district court's reasoning, therefore, appeared to rest heavily on the technical violations. Indeed, Hunt's unremitting abuse of illegal drugs, if properly proved, quite arguably would foretell a much more troubling path for him than would the comparatively minor new crimes, just as the district court suggested.

We are impeded in our review because of the diffuse character of the district court's bench ruling explaining the decision to revoke. The explanation may be fairly considered rather nonspecific and, to some degree, opaque. We, therefore, decline to conclude the district court would have revoked Hunt's probation if the only violations it

7

weighed were the new traffic offenses. As crimes go, they are neither violent nor particularly destructive of others' rights, especially in these circumstances. The district court said nothing to indicate they, alone, would have warranted revocation in this case. See *State v. Wilson*, 314 Kan. 517, 524, 501 P.3d 885 (2022) (appellate court declines to infer district court would have revoked probation based on available legal grounds it "did not refer to or make findings under").

Given the heightened review required under *Hurley*, we are not persuaded beyond a reasonable doubt the district court would have revoked Hunt's probation based solely on the new crimes evidence. As we have said, the district court could have done so, but the record does not demonstrate the district court would have exercised its discretion that way. We likely would come to the same conclusion applying the usual abuse of discretion standard since the district court made both legal and factual errors. And the hearing transcript permits us to do no more than guess about how the district court would have exercised its discretion absent those errors. We should not engage in that sort of speculation. Cf. *State v. Herring*, 312 Kan. 192, 201, 474 P.3d 285 (2020) (Although a reviewing court "may think" it knows what a district court would have done absent a legal error, "it cannot know for sure until the lower court does the [proper] analysis."); *State v. Jackson*, No. 124,540, 2023 WL 176079, at *3 (Kan. App.) (unpublished opinion) (when district court makes legal error in exercising judicial discretion, appellate court typically should remand for further consideration), *rev. denied* 317 Kan. ___ (May 5, 2023).

In closing out our review, we turn to the journal entry of probation revocation. The journal entry indicates the district court revoked Hunt's probation both because he committed new crimes and had received a dispositional departure sentence from presumptive imprisonment to probation. Those were the boxes checked on the journal entry form without further explanation. But a district court's pronouncements from the bench in revoking probation control over the contents of a journal entry prepared later.

8

See *Wilson*, 314 Kan. at 524; *State v. McCullough*, No. 122,614, 2021 WL 2021531, at *3 (Kan. App. 2021) (unpublished opinion) (grounds district court cites for probation revocation during hearing control over journal entry); cf. *Abasolo v. State*, 284 Kan. 299, 303-04, 160 P.3d 471 (2007) (sentence pronounced during probation revocation hearing controls over sentence recited in journal entry). Moreover, a district court cannot properly use a journal entry to augment the grounds for revocation stated during the hearing because the defendant has a right to be present for the pronouncement. *State v. Baldwin*, 37 Kan. App. 2d 140, 143, 150 P.3d 325 (2007) (recognizing statutory right in K.S.A. 2005 Supp. 22-3716[b] to be present at revocation hearing).

As we have already explained, the district court did not suggest it viewed Hunt's new crimes—both misdemeanors—standing alone as warranting revocation in these factual circumstances, even though they would have been legally sufficient to do so under K.S.A. 2022 Supp. 22-3716(c)(7)(C). Similarly, although the district court alluded to Hunt having received a departure sentence, it neither said it was revoking his probation for that reason nor cited K.S.A. 2022 Supp. 22-3716(c)(7)(B), the subsection authorizing such a revocation. As much as anything, the district court's single reference to the departure seemed to be an acknowledgement of Hunt's criminal history and his recidivism. The comment fell well short of the tailored findings required under *Wilson*. We cannot use the journal entry as a judicial crutch to prop up the district court's otherwise Delphic explanation for revocation offered during the hearing.

Even if we were to conclude the district court revoked Hunt's probation because he had received a departure sentence (although the hearing transcript really supports neither that conclusion nor the journal entry finding), we cannot say the record demonstrates the district court would have made that determination based only on the new crimes. To all appearances, such a decision would have been dependent in no small part on the impermissibly admitted evidence proving the technical violations. So if the district court

*did* intend to revoke the probation because Hunt received a departure sentence, the decision could not stand for the reasons we have already explained.

We, therefore, reverse the district court's revocation of Hunt's probation. Much as the court did in *Wilson*, we remand with directions to the district court to hold another hearing for the purpose of stating a decision to revoke, to continue, or to modify Hunt's probation based on the evidence properly admitted at the September 2022 hearing and, in turn, to impose a legally appropriate sanction or sentence if it chooses to do so in its sound discretion.

Reversed and remanded with directions.