No. 66,273

STATE OF KANSAS, *Appellant,* v. CATHY S. YURA, *Appellee.*

(825 P.2d 523)

 Opinion filed January 17, 1992. 

*Kerwin L. Spencer*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellant.

*Charles E. Watson*, of Wellington, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This is a probation revocation, first-impression case. We are reviewing (1) a ruling that criminal charges used' as a basis for probation revocation must be resolved prior to a probation revocation proceeding, and (2) the trial court's refusal to admit laboratory test results under K.S.A. 1990 Supp. 22-3716(2).

The State of Kansas filed a motion to revoke the probation of Cathy S. Yura, alleging Yura had violated two conditions of her probation by providing alcohol to minors and testing positive for marijuana use. The trial court refused to consider the State's evidence and dismissed the motion to revoke probation.

Our jurisdiction is under K.S.A. 22-3602(b)(3). The State has appealed on a question reserved.

We reverse and remand.

## Facts

Yura pled guilty to one count of possession of marijuana in violation of K.S.A. 1990 Supp. 65-4127b(a)(3). She was placed on probation for two years. General probation conditions required Yura to obey all federal, state, municipal, and county laws and ordinances and not to possess, use, or traffic in controlled substances. A special condition also prohibited Yura from possessing or consuming any controlled substance. Yura was required to submit to blood/urine tests upon request of the court services officer.

The State filed a motion to revoke probation, alleging positive urine tests showing cannabinoids (marijuana). The motion also alleged that Yura had provided beer to minors, a new charge upon which she had been arrested.

A court services officer requested a full drug screen. An initial urine test was positive for cannabinoids; consequently, a second urine test was requested. The second urine sample was collected at a hospital in Wellington, Kansas, and sent to a laboratory for

testing. The second urine test result also was positive for cannabinoids.

Yura moved to strike the revocation allegation of providing beer to minors. She informed the court that criminal charges on that ground were set for a jury trial at a later date. Yura asserted that probation revocation on the basis of a new crime was premature before conviction of that crime. Yura contended that by proceeding with the revocation hearing she would be denied her right to a jury trial and a mere accusation prior to conviction was an inappropriate ground upon which to revoke probation.

The State responded, informing the court that the jury trial had been postponed due to a busy court calendar. The State asserted that a conviction was only one way to prove a probation violation. Another method would be for the State to introduce sufficient evidence for the court to find that Yura had violated the law.

### Rulings of the Trial Court

The trial court granted Yura's motion to strike the providing beer to minors allegation, reasoning that an action to revoke probation is inappropriate and premature when the alleged crime providing the basis for the revocation proceeding is set for a jury trial.

The State proceeded to present evidence based on positive urine tests for cannabinoids. The court services officer testified that a urine sample was sent to a laboratory for testing. She identified a laboratory report she had received as a correct copy of the test result.

The State attempted to introduce the laboratory test result under K.S.A. 1990 Supp. 22-3716. The State's exhibit consisted of the affidavit of Donald W. Long, Director of Toxicology at Roche Biomedical Laboratories. In his affidavit Long averred that qualified personnel had performed a gas chromatograph mass spectrometry test on the numbered urine sample (assigned to Yura) and that the result was positive for cannabinoids. The laboratory report and Long's vitae were attached to the affidavit. Long was not present to testify.

Yura objected to the exhibit. She asserted that the affidavit was hearsay. She also argued that admission of the affidavit would violate her right to confront witnesses against her.

The State responded that the urinalysis was conducted in St. Joseph, Missouri, and that it was impractical to bring someone from St. Joseph to testify every time a laboratory report reflected a positive result. (The laboratory report states the test was conducted in Kansas City, Missouri.) The State suggests that limited funding for such testing is the reason the legislature enacted K.S.A. 1990 Supp. 22-3716(2), which allows written statements in probation revocation hearings. The State asked the trial court to review the exhibit. The trial court refused to admit the exhibit on the grounds the exhibit would deny Yura's right to confront witnesses against her.

The State then proffered the testimony of Sandra Hodgson, the person at the hospital who handled Yura's urine specimen. The proffer indicated that Hodgson would testify that she observed Yura provide the specimen, took it directly from Yura, had Yura initial it, packaged the sample, made sure it was not tampered with, and delivered the sample to a courier who transported it to the Roche Biomedical Laboratories.

### Probation Revocation Prior to Trial

The State contends the trial court erred in striking the allegation that Yura violated her probation by violating the law, *i.e.*, by committing the new crime of providing beer to minors. Because a probation violation may be proved by the lesser preponderance of the evidence standard, rather than beyond a reasonable doubt, the State argues there is no need to wait for conviction. The State expresses its interest in putting probation violators in jail as soon as possible due to their history of criminal activity.

Yura emphasizes that no Kansas appellate cases hold that probation may be revoked for an alleged commission of a crime before the probationer has been tried for the new offense. She declares that the trial court did not abuse its discretion in granting her motion to strike.

In *Morrissey v. Brewer*, 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972), the United States Supreme Court set forth the minimum due process requirements in revoking parole. The Court reasoned that revocation of parole is not part of criminal prosecution and, thus, the full panoply of rights due in a criminal prosecution is not applicable to parole revocation. 408 U.S. at 480.

The Supreme Court extended the minimum requirements of due process in *Morrissey* to probation revocation proceedings in *Gagnon v. Scarpelli,* 411 U.S. 778, 786, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973).

We have held that K.S.A. 1990 Supp. 22-3716 governs revocation of probation proceedings and satisfies the requirements of *Gagnon. State v. Rasler,* 216 Kan. 292, 294-95, 532 P.2d 1077 (1975).

K.S.A. 1990 Supp. 22-3716 provides that the defendant may be arrested for a probation violation at any time during probation. Upon arrest the defendant shall be brought before the trial court without unnecessary delay for a hearing on the violation. The State bears the burden of establishing the violation by a preponderance of the evidence. *Rasler,* 216 Kan. at 295.

In *Rasler,* we reasoned that under K.S.A. 22-3716, probation could be revoked based upon commission of another crime even if the defendant was never charged with the crime or was charged, but later acquitted. 216 Kan. at 295.

In *State v. Woods,* 215 Kan. 295, 524 P.2d 221 (1974), Woods was convicted of first-degree robbery and placed on probation. While on probation, Woods was convicted of selling marijuana. Proceedings were commenced to revoke his probation. The trial court revoked probation while his appeal from the marijuana conviction was pending. Woods asserted error in revoking his probation on the basis of a state law violation that was on appeal. Woods pointed out that the trial court, in revoking his probation, took judicial notice of the files and record of conviction and did not conduct an independent investigation of the marijuana conviction. We rejected Woods' argument, reasoning that the jury verdict of guilty was sufficient to sustain a finding that Woods was not a law-abiding citizen. 215 Kan. at 296.

*Woods* cited *Standlee v. Smith,* 83 Wash. 2d 405, 518 P.2d 721 (1974), which affirmed an order revoking Standlee's parole because of an assault committed by Standlee while he was on parole. The parole revocation hearing was conducted after Standlee was acquitted of the assault charge. The hearing officer concluded Standlee was in fact the assailant under the lesser standard of proof of the preponderance of the evidence and revoked Standlee's parole. Standlee appealed, contending the doc-

trine of collateral estoppel, as a part of the 5th Amendment guarantee against double jeopardy, prevented the parole board from relitigating the issue of his guilt of the assault. The Washington Supreme Court affirmed the parole revocation, reasoning that collateral estoppel did not apply because the burden of proof at a parole revocation hearing is less than the burden of proof in a criminal prosecution. 83 Wash. at 409.

Yura advances the argument made by Standlee. The argument is inapplicable because Yura's probation revocation hearing occurred prior to trial of the new criminal charge. (We were informed during oral argument that Yura was acquitted on the charge of providing beer to minors.)

Yura relies on *Standlee v. Rhay*, 403 F. Supp. 1247 (E.D. Wash. 1975), in which the court granted Standlee's writ of habeas corpus. However, the 9th Circuit Court of Appeals reversed the district court and agreed with the Washington Supreme Court that collateral estoppel does not bar a parole revocation hearing after a criminal acquittal. *Standlee v. Rhay*, 557 F.2d 1303, 1307 (9th Cir. 1977).

Yura also relies on *People v. Grayson*, 58 Ill. 2d 260, 319 N.E.2d 43 (1974). While on probation Grayson was tried and acquitted of armed robbery. Following his acquittal, a revocation hearing was held and his probation was revoked. The Illinois Supreme Court reversed, holding that Grayson's acquittal collaterally estopped the State from considering the armed robbery at a revocation hearing. 58 Ill. 2d at 265. *Grayson* appears to express a minority view. See Annot., Acquittal in Criminal Proceeding as Precluding Revocation of Probation on Same Charge, 76 A.L.R.3d 564.

Yura also argues that *Grady v. Corbin*, 495 U.S. 508, 109 L. Ed. 2d 548, 110 S. Ct. 2084 (1990), overrules the decisions in 76 A.L.R.3d 564 which permit revocation of probation after an acquittal on the same charge. Yura's reliance on *Grady* is misplaced. *Grady* involved successive *criminal prosecutions* for the same conduct. *Grady* does not apply because revocation of probation is not part of the criminal prosecution. *Gagnon*, 411 U.S. at 662.

The State relies on *State v. Jameson*, 112 Ariz. 315, 541 P.2d 912 (1975), 76 A.L.R.3d 56. Jameson pled guilty to grand theft

and was placed on probation. A petition to revoke probation was filed, alleging, in part, that Jameson had failed to remain a law-abiding citizen. At the revocation hearing, the superior court continued the proceeding pending disposition of the related criminal charge. The criminal charge was later dismissed, which constituted an acquittal. The superior court found that Jameson was not a law-abiding citizen and revoked his probation. The Arizona Supreme Court reasoned that the doctrine of collateral estoppel does not preclude relitigating the issue of the criminal charge at a probation revocation hearing following a dismissal constituting an acquittal. The probation revocation hearing is not a second prosecution for the same offense. In addition, the Arizona Supreme Court disapproved the practice of deferring probation revocation hearings until after adjudication of guilt or innocence on a criminal charge when both proceedings are based on the same facts. 112 Ariz. at 318.

The United States Supreme Court in *Black v. Romano,* 471 U.S. 606, 85 L. Ed. 2d 636, 105 S. Ct. 2254 (1985), reviewed a factual scenario involving a revocation hearing held before the trial of the criminal charge that provides the basis of the motion to revoke probation.

Romano pled guilty to two counts of transferring and selling a controlled substance. The trial court placed Romano on probation. While on probation, Romano was charged with a felony. After the charge was filed, the trial court (that had sentenced Romano on the controlled substances charge) held a probation revocation hearing. Several witnesses gave testimony at the hearing indicating Romano had run over a pedestrian and driven away. The trial court found that Romano had violated his probation conditions by leaving the scene of an accident, revoked probation, and ordered execution of the previously imposed sentence. The State later filed an amended information reducing the felony charge to the misdemeanor of reckless and careless driving. Romano was convicted of the reduced charges. Romano argued that the decision to revoke probation was arbitrary and contrary to due process because the alleged felony offense was unrelated to his prior conviction. The Supreme Court disagreed, stating the violation of probation was not an innocuous violation of the conditions of his probation, but resulted from a finding that Romano

had committed a felony involving injury to another person. The Court noted that its conclusion was not affected by the fact that the charges were reduced to a misdemeanor *after* the revocation proceeding. 471 U.S. at 616. Although the exact issue in the case at bar was not raised, the United States Supreme Court found no error in the probation revocation occurring before resolution of the pending criminal charge.

In *State v. Wahlert,* 379 N.W.2d 10 (Iowa 1985), Wahlert pled guilty to first-degree robbery and terrorism. Wahlert was placed on probation. He was arrested later and charged with second-degree burglary. Wahlert moved to continue the resulting probation revocation hearing until after final disposition of the criminal trial. His motion was denied. At the revocation hearing, the State presented several witnesses, including a person who had participated in the burglary. Wahlert did not testify. The trial court revoked Wahlert's probation. Wahlert was sentenced on the original conviction. Thereafter, the State dismissed the pending burglary charge.

On appeal, Wahlert asserted that it was a violation of fundamental fairness and due process and against public policy for the trial court to deny his motion for a continuance of the revocation hearing until after the disposition of the criminal charge. Wahlert argued that holding the revocation hearing before resolution of the pending criminal trial created an unreasonable tension between his Fifth Amendment right to remain silent and the danger that his testimony in the revocation hearing might later be used to convict him. Wahlert requested a rule requiring the State to either hold the revocation hearing after the criminal trial or provide him "use immunity" barring use of his revocation hearing testimony at any later prosecution for the pending charge. The *Wahlert* court declined, reasoning that to cause a defendant to make a strategic choice between conflicting constitutional rights is not unconstitutional. Therefore, disposition of the criminal prosecution prior to a probation revocation hearing is not constitutionally mandated. The *Wahlert* court declared: (1) There is no reason to interfere with the trial court's prompt determination as to whether the goal of rehabilitation is being met through probation; (2) society has an interest in prompt resolution of probation violations because the defendant may pose a danger if left at

liberty; and (3) judicial restraint must be exercised because the legislature has the expertise to deal with public policy concerns. We find the rationale of *Wahlert* persuasive.

"Probation from serving a sentence is an act of grace by the sentencing judge and is granted as a privilege not as a matter of right." *State v. Starbuck,* 239 Kan. 132, 133, 715 P.2d 1291 (1986).

In the case at bar, the trial court granted Yura's motion to strike based on the commission of a new crime, stating: "I think it's inappropriate to . . . bring any action to revoke someone's probation when the matter is pending before the Court in another case."

The trial court's analysis was in error. The decision to postpone the revocation proceeding until after trial of the criminal charge that provides the basis for the motion to revoke probation should be left to the sound discretion of the trial court. It was not inappropriate for the State to file its motion for revocation before resolution of the pending criminal charge.

### K.S.A. 1990 Supp. 22-3716(2)—Written Statements Under Oath and the Hearsay Rule—Right of Confrontation

The State asserts that: (1) The trial court erred in refusing to admit the laboratory test and affidavit under K.S.A. 1990 Supp. 22-3716(2); (2) the affiant's out-of-state status provided a sufficient reason to use an affidavit; (3) K.S.A. 1990 Supp. 22-3716(2) is constitutional and does not violate Yura's right to confront witnesses against her; and (4) Yura's opportunity to cross-examine the court services officer and the laboratory technician, satisfies Yura's right to confront witnesses against her.

Yura counters the State by rephrasing the issue as whether the trial court abused its discretion in refusing to admit the affidavit in question. Yura points out that K.S.A. 1990 Supp. 22-3716(2) states: "Relevant written statements made under oath *may* be admitted and considered by the court." (Emphasis added.) Yura contends her right to cross-examine the court services officer and the laboratory technician would not enable her to challenge the accuracy of the test results or the affiant's credibility. She asserts there was no abuse of discretion.

K.S.A. 1990 Supp. 60-460(b) provides that affidavits, to the extent admissible by the statutes of this State, are an exception

to the inadmissibility of hearsay. Because relevant written statements made under oath are admissible under K.S.A. 1990 Supp. 22-3716(2) in probation revocation hearings, such statements are a K.S.A. 1990 Supp. 60-460(b) exception to the inadmissibility of hearsay. The trial court is vested with discretion in admitting such statements under K.S.A. 1990 Supp. 22-3716(2).

*Morrissey v. Brewer*, 408 U.S. 471, 489, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972), held that the minimum due process requirements in parole revocation proceedings include "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Morrissey* emphasized:

"[T]here is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." 408 U.S. at 489.

*Morrissey* provides that affidavits may be admitted for good cause shown without violating the probationer's right to confront witnesses.

In *United States v. Bell*, 785 F.2d 640 (8th Cir. 1986), Bell had been placed on a two-year probation. The government petitioned for revocation of Bell's probation. The petition cited three instances in which urine samples taken from Bell tested positive for THC, indicating Bell was using marijuana. The petition also stated that Bell had been arrested for driving while intoxicated, possession of marijuana, and possession of narcotics paraphernalia. The revocation hearing was held before the district court. (Bell had not been brought to trial at the time of the hearing or at the time the opinion was released.) The government presented the testimony of two witnesses: the initial probation officer, who had explained the conditions of probation to Bell, and a second probation officer, Arlo Lindsey. Through Lindsey, the government introduced reports from the laboratory that analyzed Bell's urine sample and police reports of Bell's arrest. At the close of the hearing, Bell's probation was revoked.

Bell appealed, arguing that the admission of the urinalysis and police reports violated his right to confront and cross-examine witnesses against him. The 8th Circuit cited *Morrissey* and *Gag-*

*non* as authorizing the use of affidavits. The *Bell* court stated that in a probation revocation proceeding the trial court must balance the probationer's right to confront an adverse witness against the grounds asserted by the government for not requiring confrontation. 785 F.2d at 642. *Bell* listed two factors to be evaluated in examining the government's basis for dispensing with confrontation: (1) the explanation the government offers of why confrontation is undesirable or impractical, and (2) the reliability of the evidence which the government offers in place of live testimony. 785 F.2d at 643. The laboratory reports in *Bell* were determined to bear substantial indicia of reliability. They were regular reports of a company in the business of conducting such tests, and the company expected its clients to act on the basis of the reports. The *Bell* court concluded there was good cause shown to avoid the difficulty and expense of bringing the chemists who had performed the test from California to Arkansas to testify. The court stated: "In our experience, that sort of formal testimony rarely leads to any admissions helpful to the party challenging the evidence." 785 F.2d at 643. See *United States v. Penn,* 721 F.2d 762, 766 (11th Cir. 1983).

In the case at bar, the trial court refused to admit the laboratory report consisting of the affidavit and its attachments. The trial court construed K.S.A. 1990 Supp. 22-3716(2) too narrowly.

We hold that K.S.A. 1990 Supp. 22-3716(2) authorizes admission of affidavits constituting relevant written statements made under oath stating the results of a laboratory test. The admission of such an affidavit from an out-of-state chemist does not violate the probationer's right to confront and cross-examine witnesses. Such an affidavit bears substantial indicia of reliability. Cross-examination of laboratory personnel rarely leads to any admissions helpful to the party challenging the evidence. *Bell,* 785 F.2d at 643.

The trial court did not consider the reliability of the affidavit and laboratory test. We direct the trial court upon remand to utilize the two-factor test announced in *Bell* in resolving the admissibility of the affidavit and laboratory test.

The case is reversed and remanded with directions in conformity with this opinion.