NOT DESIGNATED FOR PUBLICATION

No. 120,052

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER L. KENDRICK,
*Appellant*.


MEMORANDUM OPINION

Appeal from Labette District Court; FRED W. JOHNSON JR., judge. Opinion filed February 21, 2020. Reversed and remanded with directions.

*Christina M. Kerls* and *Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Stephen P. Jones*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., HILL and GARDNER, JJ.


PER CURIAM: Christopher Kendrick appeals a 180-day sanction for violating the terms of his probation. He contends the district court violated his due process rights in two ways. First, he contends that the district court's admission of a case report written by his probation officer, who did not testify at the probation revocation hearing, violated his right to confront a witness. Second, he argues the district court violated his right to notice by finding he violated his terms and conditions of probation when he had not received written notice of these sanctions. Finally, he argues that because no evidence was presented on a sanctionable violation, this court should vacate his 180-day sanction.

1

We agree with Kendrick. The district court failed to apply the test our Supreme Court has established in *State v. Yura*, 250 Kan. 198, 207-08, 825 P.2d 523 (1992), to admit the case report, and Kendrick did not receive any other written notice of violations. The State presented no evidence of the two possible sanctionable violations, and Kendrick did not admit to them. Thus, we reverse and remand with directions to vacate the 180-day sanction.

*Factual and Procedural Background*

In May 2016, Christopher Kendrick pled to possession of marijuana with intent to distribute, a severity level four felony. The district court sentenced Kendrick to 15 months in prison but granted him 18 months of probation.

On October 31, 2017, Megan O'Neal, Kendrick's probation officer, filed a case report detailing Kendrick's many probation violations. The report showed that Kendrick had served a three-day probation sanction from September 26, 2017, to September 29, 2017, for testing positive for THC. The report listed two violations after that date:

- A "No Show" to a probation appointment on October 2, 2017, and
- Kendrick's discharge from drug and alcohol treatment for failing to report on October 6, 2017.

On November 28, 2017, O'Neal filed an affidavit outlining—without specifics—the probation violations and recommendation that the State file a motion for revocation. The affidavit did not incorporate the case report. The same day, the State moved to revoke Kendrick's probation. The district court held a probation revocation hearing on July 16, 2018, after continuing it from June 5, 2018. The State never refiled or amended its original motion, and no other case report or affidavit is in the record.

2

At the hearing, the State called only R.J. Norman, Kendrick's current probation officer, to testify. Norman testified about violations between June 5 and July 16, 2018. When the State asked Norman about the report O'Neal filed, Kendrick objected for lack of personal knowledge and foundation. The State replied:

> "It's already been filed with the Court and I know this Court is aware that reports that are filed by other people—
>
> . . . .
>
> "—in probation cases are able to be admitted. The State will just move to admit or this Court take judicial notice of the case report that was filed October 31st of 2017. I don't know that it's necessary that I ask Mr. Norman what the report says when this Court is already aware of it."

The district court admitted the case report because it had already been filed with the court.

Kendrick testified as well. He confirmed that he had served a three-day sanction for testing positive for THC. When addressing his missed probation appointments, Kendrick mentioned he had trouble keeping appointments because of memory issues. However, he did not admit to missing any probation appointments between his three-day sanction in September 2017 and the revocation hearing in July 2018. Kendrick did not directly admit to failing his drug and alcohol treatment, but he stated that he almost completed it when he served his three-day sanction. He also said he would show up every time he was asked to attend.

The district court found that Kendrick had violated his probation. The court noted that several violations had occurred since the June 5, 2018 hearing date. The district court imposed a 180-day sanction and extended Kendrick's probation for 18 months after he served his sanction.

Kendrick timely appeals.

*Did the District Court Deny Kendrick Due Process During the Probation Revocation Proceedings?*

On appeal, Kendrick argues that the district court violated his due process rights by finding he violated the terms and conditions of his probation. Kendrick's argument is three-pronged. First, he argues the district court should not have admitted the case report because it failed to find good cause to dispense with his right to confront a witness. Second, he contends he was not given written notice of any violation after the State's original motion. Third, the State presented no evidence of a sanctionable violation outside the case report. Thus, Kendrick asks this court to vacate his sanction.

*Preservation*

Kendrick did not explicitly argue a due process violation below, but Kendrick argues—and the State concedes—that this is a constitutional issue that can be raised for the first time on appeal. In general, constitutional issues cannot be raised for the first time on appeal; however, a party may raise an issue for the first time if:

> "'(1) [T]he newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) the claim's consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court's judgment may be upheld on appeal despite its reliance on the wrong ground or reason for its decision.' [Citation omitted]." *State v. Hirsh*, 310 Kan. 321, 338, 446 P.3d 472 (2019).

Kendrick argues his claim fits within the second exception because it implicates his fundamental right to the due process of law. See *State v. Foster*, 290 Kan. 696, 702, 233 P.3d 265 (2010) (holding that the defendant's due process concerns warrant review

4

for the first time on appeal). We agree. Kendrick's claim raises concern with the district court's compliance with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

*Standard of Review*

Whether a district court has violated a defendant's due process rights is a question of law subject to unlimited review. *Requena v. State*, 310 Kan. 105, 108, 444 P.3d 918 (2019).

*Analysis*

K.S.A. 2018 Supp. 22-3716 governs probation revocations and sanctions. If a probationer violates the terms of his probation, he may be arrested. K.S.A. 2018 Supp. 22-3716(a). Upon arrest and detention, the court services officer must submit in writing a report showing how the defendant violated his probation. K.S.A. 2018 Supp. 22-3716(b)(1). The statute then affords the probationer a hearing on his probation violations:

> "Unless the defendant, after being apprised of the right to a hearing by the supervising court services or community correctional services officer, waives such hearing, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charged. The hearing shall be in open court and the state shall have the burden of establishing the violation. The defendant shall have the right to be represented by counsel and shall be informed by the judge that, if the defendant is financially unable to obtain counsel, an attorney will be appointed to represent the defendant. The defendant shall have the right to present the testimony of witnesses and other evidence on the defendant's behalf. Relevant written statements made under oath may be admitted and considered by the court along with other evidence presented at the hearing." K.S.A. 2018 Supp. 22-3716(b)(2).

In *State v. Rasler*, 216 Kan. 292, 296, 532 P.2d 1077 (1975), our Supreme Court found the probation revocation statute meets all the constitutional requirements for such proceedings.

The State vaguely alluded to the last sentence of the above statute in moving to admit O'Neal's case report during Kendrick's probation revocation hearing, suggesting O'Neal's case report was a "relevant written statement made under oath." But the record shows that O'Neal's case report was not a "written statement made under oath." See K.S.A. 2018 Supp. 22-3716(b)(2). Although she filed an affidavit, it failed to mention or incorporate the case report, and the case report did not include an affiant statement.

*Right to Confront and Cross-examine in a Probation Hearing*

A probationer at a probation violation hearing is not afforded the full panoply of rights due in a criminal prosecution and has no Sixth Amendment right to confront a witness. *State v. Marquis*, 292 Kan. 925, 928, 931, 257 P.3d 775 (2011).

The United States Supreme Court has articulated the minimum due process requirements that must be satisfied before a prisoner's parole can be revoked. Those procedures are:

> "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972).

6

See *Brown v. Kansas Parole Board*, 262 Kan. 903, 909, 943 P.2d 1240 (1997). These same due process requirements extend to probationers. *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973); *Marquis*, 292 Kan. at 928-29.

Probationers have a qualified due process right to confront and cross-examine adverse witnesses. *Yura*, 250 Kan. at 207 (quoting *Morrissey*, 408 U.S. at 489). This right is qualified because if the district court finds good cause for not allowing confrontation, it may dispense with confrontation without violating the probationer's due process. *Yura*, 250 Kan. at 207. Because parole revocation does not equate to a criminal prosecution, it "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey*, 408 U.S. at 489.

Our Supreme Court has adopted a test for finding whether "hearsay evidence at a probation revocation hearing comports with minimum due process." *Marquis*, 292 Kan. at 932. This two-part test to determine whether "good cause" exists to admit evidence without confrontation examines: "(1) the explanation the State offers for why confrontation is undesirable or impractical, and (2) the reliability of the evidence which the State offers in place of live testimony." *Yura*, 250 Kan. 198, Syl. ¶ 4 (adopting the test from *United States v. Bell*, 785 F.2d 640, 642-43 [8th Cir. 1986]). The district court must show that it has considered both factors. *Marquis*, 292 Kan. at 932; *State v. Palmer*, 37 Kan. App. 2d 819, 827, 158 P.3d 363 (2007) (reversing the district court for failure to apply both prongs of *Yura*'s two-factor good cause test).

Here, the district court, in admitting O'Neal's file without her testimony, did not make any findings that would satisfy the *Yura* good cause test. First, the district court did not consider why confrontation was undesirable or impractical. Only on appeal does the State suggest that O'Neal was no longer a probation officer at the time of the hearing. Yet, even if we considered this reason, not offered in the district court, it fails to show

7

that O'Neal's presence was undesirable or impractical. See *Palmer*, 37 Kan. App. 2d at 826 (finding statement that probation officer lived in another county did not show that confrontation was undesirable or impractical). Second, the district court failed to indicate that it considered O'Neal's unsworn report to be reliable.

We hold the district court erred in admitting the case report without finding good cause for not allowing confrontation.

*Right to notification of probation violations*

We next consider Kendrick's argument that the proceeding violated his due process right to written notice of probation violations.

Kendrick is correct that O'Neal's case report, filed October 31, 2017, contained the only written notice of alleged probation violations. Yet the district court found that Kendrick committed additional violations that occurred after the June 5, 2018 hearing date. But the State failed to amend its motion, or file another report, or otherwise give Kendrick written notice of those alleged violations.

To protect a probationer's due process right to notice, K.S.A. 2018 Supp. 22-3716(b)(1) requires a probation officer to submit a written report to the court detailing how a defendant violated his or her probation. See *State v. Hurley*, 303 Kan. 575, 582, 363 P.3d 1095 (2016); see also *Morrissey*, 408 U.S. at 489 (stating minimum due process requirements include written notice of the claimed violations of parole). So to protect Kendrick's due process right to written notice, the district court should not have considered any violation not included in O'Neal's case report or affidavit. See *Hurley*, 303 Kan. at 583-84 (holding defendant's revocation did not follow statutory provisions, including the written notice provision required by due process).

*Not Harmless Error*

The State argues that this error was harmless because Kendrick admitted during his testimony that he violated conditions of his probation. Kendrick replies that he did not admit to any sanctionable violation in the original case report and affidavit.

When, as here, an error infringes on a party's federal constitutional right, a court will declare a constitutional error harmless only when the party benefiting from the error persuades the court "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705).

As stated above, the district court should not have considered probation violations that were not included in O'Neal's written report filed October 31, 2017. But Kendrick had already been sanctioned for some of the violations stated in the case report and he could not be sanctioned again for the same violations. See *State v. Clapp*, 308 Kan. 976, 984, 425 P.3d 605 (2018); *State v. Henson*, No. 119,257, 2019 WL 2398042, at *3 (Kan. App. 2019) (unpublished opinion) (finding the commission of a new violation after the defendant had served the previous sanction is implicit in K.S.A. 2018 Supp. 22-3716's graduated sanction statutory scheme). Kendrick had served a quick-dip sanction for his probation violations before September 29, 2017. The district court here lacked statutory authority to impose another graduated sanction for the same violation that gave rise to Kendrick's previous sanction.

This means the only two sanctionable violations listed in the case report were:

- Kendrick's October 2, 2017 "no show" to his probation officer, and

- Kendrick's failure to report to drug and alcohol treatment on October 6, 2017.

We have found above that the State could not prove these violations by the case report. Thus the sole evidence of either of these violations rests in Kendrick's testimony.

The State asserts that Kendrick admitted these violations, waiving his right to assert reversible error, citing *State v. Carter*, 5 Kan. App. 2d 201, 207-08, 614 P.2d 1007 (1980). In *Carter*, the district court admitted hearsay evidence during the revocation hearing. Despite that error, the *Carter* court found that evidence the defendant had presented showed his probation violations, waiving "his right to assert reversible error." 5 Kan. App. 2d at 208.

We thus review the record to see whether Kendrick admitted to either of these sanctionable violations, as did the probationer in *Carter.* The record shows that although Kendrick admitted that he had forgotten some appointments with his probation officer due to memory issues, he did not admit to missing an appointment on October 2, 2017. He made no admission of this alleged violation.

Kendrick also testified about his alleged discharge from drug and alcohol treatment due to a failure to report or poor attendance. On direct, Kendrick said he had spoken to his probation officer about drug and alcohol counseling and had asked the officer whether he still needed to go. The following colloquy then occurred:

"[COUNSEL]: Okay. And was his response something that made you feel like that was something that you needed to continue doing?
"[KENDRICK]: It don't matter. Like if he wanted me to continue on what I'm doing, I wouldn't have no problem with it. It just, when I go do it, I gotta pay a little fee.
"[COUNSEL]: Okay.
"[KENDRICK]: And sometimes that would be hard to pay sometimes.

10

"[COUNSEL]: Okay. So again, that's—it's another, another financial issue; is that right?

"[KENDRICK]: Yes."

On cross-examination, the State's counsel asked Kendrick about this issue.

"[COUNSEL]: Okay. Did you successfully complete your drug and alcohol treatment at Labette Center for Mental Health?

"[KENDRICK]: I almost did. But she had, I had to go do them dip days.

"[COUNSEL]: And so you unsuccessfully?

"[KENDRICK]: No. You can—

"[COUNSEL]: Discharged because of the dip days?

"[KENDRICK]: No. You can talk to the person that I was going up there to see. I forgot his name.

"[COUNSEL]: Uh-huh.

"[KENDRICK]: What was his name? I can't think of his name. But you can ask him every time he told me to come up there and report, I was showing up."

This testimony lacks clarity. Kendrick appears to deny, rather than admit, that he was discharged from treatment due to a failure to report. We find that Kendrick's statements do not amount to an admission of his failure to report to drug and alcohol treatment on October 6, 2017. Thus, Kendrick has not waived his right to assert reversible error. And the State fails to show sufficient evidence that Kendrick violated his terms and conditions of probation by failing to report to his probation officer on October 2, 2017, or by failing to report to drug and alcohol treatment on October 6, 2017. For the reasons stated above, we find reversible error.

We note that Kendrick has already served his 180-day sanction. We reverse and remand with directions to vacate the 180-day sanction.

Reversed and remanded with directions.

11