NOT DESIGNATED FOR PUBLICATION

No. 122,822

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LLOYD L.J. JACKSON III,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; JENNIFER L. MYERS, judge. Opinion filed July 1, 2022. Affirmed and remanded with directions.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., WARNER and ISHERWOOD, JJ.

WARNER, J.: Lloyd Jackson III appeals the district court's decisions revoking his probation and denying his motion to withdraw his plea. He asserts there was insufficient evidence to support a finding that he violated his probation, that the district court violated his due process rights when it revoked his probation based on evidence from a separate trial, and that the district court erred in denying his motion to withdraw his plea. After reviewing the record and the parties' arguments, we affirm the district court's decisions revoking Jackson's probation and denying his motion to withdraw his plea.

1

FACTUAL AND PROCEDURAL BACKGROUND

In August 2018, Jackson pleaded no contest to aggravated robbery after a trial on that charge ended with a hung jury. In September, the district court imposed a 180-month prison sentence for the aggravated-robbery conviction. The court then followed the parties' recommendation in the plea agreement—suspending Jackson's prison sentence and ordering him to serve 36 months' probation.

About a month later, there was a shooting at a Kansas City, Kansas (KCK), gas station where someone shot a gun into a car. Soon thereafter, Jackson was arrested in Missouri when he was a passenger in a stolen car involved in a police chase. Jackson's appearance and clothes at the time of this arrest matched the shooter's appearance in gas-station surveillance footage, so KCK police interviewed Jackson about the shooting while he was in jail in Missouri. The State ultimately charged Jackson with criminal possession of a firearm for the gas-station shooting and moved to revoke his probation in the earlier aggravated-robbery case based on this new charge, unrelated charges in Missouri, and other technical violations.

The State later amended Jackson's new charge from criminal possession of a firearm to criminal discharge of a firearm into an occupied vehicle, and the matter eventually went to trial. This trial also ended with a hung jury. But at the pretrial conference and at several points throughout the trial, the State asked the presiding judge—Judge Daniel Cahill—to find that Jackson violated his probation in the separate aggravated-robbery case based on the evidence presented at the criminal-discharge trial. Judge Cahill granted that request out of concerns for judicial economy, not wanting to require the parties to present the same evidence a second time at a different hearing. Judge Cahill ultimately agreed that—although the jury did not convict Jackson beyond a reasonable doubt—a preponderance of the evidence showed that Jackson committed both the initial charge (criminal possession of a firearm) and the amended charge (criminal

2

discharge of a firearm into an occupied vehicle). Thus, Judge Cahill found that Jackson violated his probation in the earlier aggravated-robbery case.

After finding a probation violation, Judge Cahill left the decision whether to revoke probation to the judge overseeing Jackson's probation case, Judge Jennifer Myers. Judge Myers, who had originally accepted Jackson's plea and sentenced him in 2018, held a disposition hearing where the State proceeded only with the violations Judge Cahill found—criminal possession of a firearm and criminal discharge of a firearm into an occupied vehicle—and withdrew all other allegations.

At the hearing, the parties summarized the evidence from Jackson's criminal-discharge case. Jackson and the detective who investigated the gas-station shooting also testified. The evidence presented at this hearing included the similarities between Jackson and the man in the gas station surveillance footage and that a witness identified Jackson off the record as the person who stole the car involved in the Missouri arrest. And the detective testified that the shell casings from that carjacking came from the same gun involved in the gas-station shooting. After hearing the evidence and arguments, Judge Myers accepted Judge Cahill's finding that Jackson violated his probation by committing criminal possession and criminal discharge. She then revoked Jackson's probation and imposed the underlying 180-month sentence.

Separately, Jackson also moved to withdraw his plea, claiming that his attorney was incompetent and that Jackson did not fully understand his other options before entering into the plea agreement. The district court held a hearing on this motion the week after it revoked Jackson's probation. Both Jackson—represented by new counsel—and his former attorney, Brett Richman, testified. Richman testified that Jackson had rejected an alternative offer of 40 months in prison. Jackson claimed that Richman never explained that offer and that if Richman had, then Jackson would have accepted it. Jackson also testified that Richman never explained that the State only had to prove a

3

probation violation by a preponderance of the evidence. The district court credited Richman and denied Jackson's motion to withdraw his plea.

DISCUSSION

Jackson now appeals both the revocation of his probation and the denial of his plea-withdrawal motion. We find no error and affirm.

1. *Sufficient evidence supports the district court's finding that Jackson violated his probation.*

Revoking someone's probation requires two distinct inquiries by the district court: (1) determining whether a defendant violated probation; and (2) if so, determining whether to revoke probation. *State v. Skolaut*, 286 Kan. 219, 227, 182 P.3d 1231 (2008). The State must establish a probation violation by a preponderance of the evidence. *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007), *rev. denied* 286 Kan. 1183 (2008). Because of this lower standard, a court can determine that evidence is enough to find a probation violation even if it was not enough to convict a defendant at trial. *State v. Yura*, 250 Kan. 198, 202, 825 P.2d 523 (1992).

Appellate courts review the factual determination of whether a defendant violated probation for substantial competent evidence. *State v. Lyon*, 58 Kan. App. 2d 474, 478, 471 P.3d 716, *rev. denied* 312 Kan. 898 (2020). "'Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion.'" *Gannon v. State*, 303 Kan. 682, 699-700, 368 P.3d 1024 (2016). The decision to revoke probation is subject to review for an abuse of discretion. *State v. Hurley*, 303 Kan. 575, 580, 363 P.3d 1095 (2016). A court abuses its discretion if its decision is unreasonable or based on a legal or factual error. *State v. Farmer*, 312 Kan. 761, 763, 480 P.3d 155 (2021).

4

The district court found that Jackson violated his probation by committing two new crimes: criminal possession of a firearm and criminal discharge of a firearm into an occupied vehicle. Jackson asserts that the only violation the State could pursue was criminal possession of a firearm—an assertion we address later in this opinion—and that it failed to prove that crime because there was no evidence that he had been convicted of a felony.

Considering first Jackson's sufficiency challenge, the evidence supports the district court's findings on both crimes. Jackson essentially concedes that there was sufficient evidence from his trial for the district court to determine, by a preponderance of the evidence, that he committed criminal discharge of a firearm into an occupied vehicle. Surveillance footage showed a person resembling Jackson—and wearing the same sweatshirt, shoes, and backpack Jackson was arrested in two days later—shooting a gun into an occupied car. Jackson made several statements to police suggesting he was at the gas station during the shooting. And there was evidence presented to Judge Cahill linking shell casings found at the gas station to Jackson. Sufficient evidence supported a finding that Jackson violated his probation by committing criminal discharge of a firearm into an occupied vehicle.

There is also sufficient evidence supporting the finding that Jackson committed criminal possession of a firearm. To prove criminal possession of a firearm, the State must establish that the defendant has been convicted of a felony and that he or she possessed a firearm. K.S.A. 2021 Supp. 21-6304(a)(2); *State v. Howard*, 51 Kan. App. 2d 28, 45, 339 P.3d 809 (2014), *aff'd* 305 Kan. 984, 389 P.3d 1280 (2017). Jackson does not dispute that he has been convicted of a felony—indeed, he was on probation for aggravated robbery, a felony offense. Instead, he argues that the State did not present evidence of his felony conviction *at his criminal-discharge trial*, so Judge Cahill did not have evidence before him to find Jackson had committed this offense.

In making this argument, Jackson wrongly assumes that the State must have presented evidence of his felony conviction *to the jury* in his criminal-discharge trial to support his probation revocation in this case. Such evidence is generally inadmissible at trial. See K.S.A. 2021 Supp. 60-455(a). But there is no requirement that evidence of a probation violation be admissible at a jury trial. The State did not need to present evidence to the jury that Jackson had been convicted of a felony to prove his probation violation. Judge Cahill heard extensively from the parties outside the jury's presence, including various discussions about Jackson's plea and probation in this case. Jackson's felony history was clear, and the fact that the jury never heard about it does not render the evidence insufficient to prove a probation violation.

Jackson also asserts that Judge Cahill was required to formally take judicial notice of Jackson's previous conviction for the criminal-possession violation finding to be valid. Because the State sought a violation finding solely from the criminal-discharge trial and never asked the court to take judicial notice of Jackson's previous felony conviction, Jackson asks this court to apply the invited-error doctrine. But the invited-error doctrine "is not a path to relief for the party making a claim of error in an appeal." *State v. Dupree*, 304 Kan. 377, 393, 373 P.3d 811 (2016). Instead, it "works to preclude appellate review of a claim of error *if the party making the claim invited the error*." (Emphasis added.) 304 Kan. at 393. Jackson, not the State, claims error based on a ruling the State invited. Thus, the invited-error doctrine does not apply.

Even so, judicial notice was unnecessary here because there is no dispute the judge finding a probation violation knew that Jackson had a felony conviction. The parties discussed Jackson's felony probation case at several points during the trial, and Judge Cahill was aware of it when he made the violation finding. It does not matter that there was no evidence of Jackson's felony conviction presented to the jury—Judge Cahill, not the jury, had to determine whether Jackson violated probation by committing a new

6

crime. Sufficient evidence supports Judge Cahill's finding that Jackson violated his probation by committing criminal possession of a firearm.

Before moving on, we observe that Jackson correctly notes that although the State alleged several technical violations in its original motion requesting revocation, the only violations ultimately found by the district court were Jackson's commission of new crimes. The journal entry for the court's decision, however, includes all violations alleged in the State's initial motion. Though we find there is sufficient evidence to support Jackson's commission of criminal possession of a firearm and criminal discharge of a firearm at an occupied vehicle, the journal entry must be corrected to reflect that these were the only violations found by the court. We thus remand this case to the district court to issue a corrected journal entry, through a nunc pro tunc order, that accurately reflects its probation-revocation decision. Accord *State v. Mason*, 294 Kan. 675, 677, 279 P.3d 707 (2012) ("The journal entry of sentencing can be corrected by a nunc pro tunc order so that it reflects the actual sentence pronounced from the bench, which was a legal sentence.").

2. *The district court's bifurcated probation-revocation proceedings did not violate Jackson's due process rights.*

When a defendant is granted probation, the Fourteenth Amendment to the United States Constitution guarantees certain minimal due process rights before a court revokes it. *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). "'Minimum due process includes written notice of the claimed violations of probation, disclosure to the probationer of the evidence against him or her,'" and "'the opportunity to be heard in person and to present evidence and witnesses.'" *Hurley*, 303 Kan. at 582. Notice must be "'reasonably calculated, under all of the circumstances, to apprise the interested parties of the pendency of an action and to afford the parties an opportunity to present any objections.'" *Lyon*, 58 Kan. App. 2d at 479. Appellate courts review due

process issues de novo. *Hurley*, 303 Kan. at 580. Jackson challenges both the sufficiency of the notice of his violations and the sufficiency of his opportunity to be heard.

2.1.    *Jackson's challenge to the sufficiency of the notice is unpreserved.*

Jackson asserts that because the motion to revoke his probation did not list criminal discharge as an alleged violation, the district court could not revoke his probation on that ground. He argues that the State's failure to amend the revocation motion to reflect the amended charge meant that the only possible basis for revoking his probation was criminal possession of a firearm. Thus, he claims he did not have notice that the State would seek to revoke his probation based on the amended charge—criminal discharge of a firearm into an occupied vehicle.

Jackson failed to raise this argument to either district court judge in this case, however. A party generally cannot raise an issue—including a constitutional issue—for the first time on appeal. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). If a party fails to raise an issue below, "there must be an explanation why the issue is properly before the court." Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 36). Jackson did not make his notice argument before the district court, and he has not invoked an exception or explained why the issue is properly before us. He has thus not preserved his constitutional notice argument for appeal.

Jackson's failure to raise the notice issue below is important because it deprived the district court of the chance to cure any potential deficiency. For instance, had Jackson raised notice concerns below, the district court could have relied on its criminal-possession-of-a-weapon finding if it found that the criminal-discharge grounds ran into notice problems. Similarly, the State could have amended its written violation allegations to include the criminal-discharge grounds if it determined that doing so was necessary. But Jackson never raised these concerns before his appeal, so the district court never had

a chance to determine whether there were any notice issues and, if there were, to address them.

And we find that Jackson's failure to raise his notice argument before the district court is telling for another reason—namely, it demonstrates that he was aware the State's basis for revoking his probation. The State moved to revoke Jackson's probation shortly after it charged him for the gas-station shooting. The motion specifically alleged that Jackson committed a new crime, citing his new charge along with the case number for the resulting prosecution. In other words, the State made clear that it was seeking to revoke Jackson's probation based on his alleged participation in the gas-station shooting. And Jackson continued to receive notice of the State's intent throughout the ensuing prosecution; the parties and the court discussed it several times before and during the criminal-discharge trial, after the State had amended the charges.

Jackson failed to preserve his notice argument for appeal, and he does not explain why we may nevertheless hear his claim. Nor do we find a reason to venture into this analysis for the first time on appeal—particularly because the State made clear throughout the proceedings that it intended to revoke Jackson's probation based on his charge related to the gas-station shooting. This issue is not properly before us, and we decline to consider it further.

2.2.    *Jackson received a sufficient hearing on his probation violations.*

When the State seeks to revoke someone's probation, he or she has a right to "a hearing on the violation charged." K.S.A. 2021 Supp. 22-3716(b)(2). This hearing includes the right to present evidence and cross-examine witnesses. K.S.A. 2021 Supp. 22-3716(b)(2). A court may combine probation violation hearings with other hearings—such as preliminary hearings—provided the court makes distinct findings related to each

9

matter and the corresponding burden of proof. See *State v. Lloyd*, 52 Kan. App. 2d 780, 784, 375 P.3d 1013 (2016).

Jackson's trial for criminal discharge of a firearm into an occupied vehicle provided an adequate hearing on his probation violations. To satisfy due process, Jackson needed to know that the State planned to use his trial to revoke his probation—he was aware of this plan from early on. But that does not mean the district court could only find a violation based on the specific charge at trial. As long as Jackson had a chance to defend against the probation-violation allegations—whether criminal possession of a firearm or criminal discharge of a firearm into an occupied vehicle—his trial satisfied the hearing requirement.

There is no question that a jury trial for criminal discharge of a firearm into an occupied vehicle was an adequate hearing on that same alleged violation. But that trial also provided Jackson an opportunity to defend against the criminal-possession-of-a-firearm allegation. Although criminal possession of a firearm is not a lesser-included offense of criminal discharge of a firearm into an occupied vehicle—a person need not be previously convicted of a felony to commit criminal discharge—proving criminal discharge effectively proved both violations in Jackson's situation. In other words, by defending against criminal discharge of a firearm, he was also able to defend against criminal possession of a firearm.

Jackson's defense at trial was simply that the person in the surveillance footage who shot the gun was not him. So if the State proved that he was guilty of criminal discharge—recklessly firing a gun into an occupied vehicle—it would prove that he was guilty of criminal possession. See K.S.A. 2021 Supp. 21-6308 (elements of criminal discharge). That is, Jackson would have had to possess the gun to shoot it. And the district court knew of Jackson's felony conviction, the remaining element of criminal

10

possession of a firearm. Defending against criminal discharge into an occupied vehicle thus allowed him to also defend against criminal possession of a firearm.

In fact, Jackson defended against these allegations successfully enough to avoid a criminal-discharge conviction. The jury apparently remained undecided on whether he was the person in the video who possessed and fired the gun. But even though the State could not prove its case beyond a reasonable doubt, there was ample evidence from trial for the district court to make the probation-violation findings under a preponderance-of-the-evidence standard. Jackson's trial provided an adequate hearing on his probation violations.

3. *The district court did not abuse its discretion when it denied Jackson's motion to withdraw his plea.*

In his final argument on appeal, Jackson asserts that the district court erred when it denied his postsentencing motion to withdraw his plea. A district court may permit a defendant to withdraw his or her plea after sentencing "[t]o correct manifest injustice." K.S.A. 2021 Supp. 22-3210(d)(2). To determine whether there would be manifest injustice, courts consider factors from *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006): "'(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made.'" *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018). A district court may also consider other relevant factors at its discretion. 307 Kan. at 443.

Appellate courts review the denial of a motion to withdraw a plea for an abuse of discretion. 307 Kan. at 443. We will not assess witness credibility or reweigh the evidence. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011).

11

Jackson challenges the district court's decision because he asserts that his attorney, Brett Richman, rejected a plea offer to serve 40 months in prison without consulting Jackson and that Richman failed to explain that the district court could revoke Jackson's probation if it found that he committed a new crime by a preponderance of the evidence.

The district court did not abuse its discretion when it denied Jackson's motion to withdraw his plea. At the hearing on the motion, the district court heard testimony from both Jackson and Richman. Richman testified that the State offered a deal for Jackson to serve 40 months in prison and that Jackson specifically rejected this offer, which Richman memorialized in a letter to Jackson. Richman also testified that although he did not explain the preponderance-of-the-evidence standard to Jackson, he explained that the court could revoke probation if Jackson got into trouble. Jackson then testified, disputing Richman's version of events. He testified that Richman never brought the 40-month offer to him or explained the standards for revoking probation. And Jackson stated he would have accepted the 40-month offer had he known about it and had he known the standard for finding a probation violation.

The district court believed Richman. Applying the *Edgar* factors, the court made a credibility determination, noting Jackson's intelligence and familiarity with the court system. The court also pointed to the thorough plea colloquy during which the district court fully informed Jackson of the consequences of the plea before he agreed to it. The district court, therefore, found there was no manifest injustice and denied Jackson's motion.

Based on the evidence at the plea-withdrawal hearing, the district court's decision was well within its discretion. Jackson has not shown that this decision was unreasonable or based on a legal or factual error. Instead, he essentially asks us to reassess the district court's credibility determination, which we decline to do. The district court did not err when it denied Jackson's motion to withdraw his plea.

We thus affirm the district court's revocation of Jackson's probation and the court's denial of his motion to withdraw his plea. We remand the case so a nunc pro tunc journal entry may be filed to accurately reflect the specific probation violations found by the district court.

Affirmed and remanded with directions.